EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Dennis R. Conklin, Rosemarie Conklin y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>v.<br><br>Isabel Passalacqua, Michael J. Passalacqua y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Peticionarios | Certiorari<br><br>2026 TSPR 18<br><br>217 DPR \_\_\_ |

Número del Caso: CC-2025-0062


Fecha: 24 de febrero de 2026


Tribunal de Apelaciones

    Panel III


Representantes legales de la parte peticionaria:

    Lcda. Sol Beatriz Concepción Bulerín
    Lcdo. Gabriel A. Ramos Vargas


Representante legal de la parte recurrida:

    Lcdo. Daniel Molina López


Materia: Obligaciones y Contratos – De mediar una cláusula de opción, el arrendador no podrá arrendar la propiedad de un tercero, salvo en aquellas ocasiones donde se extinga el derecho del arrendatario de ejercer la opción.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Dennis R. Conklin, Rosemarie Conklin y la Sociedad Legal de Gananciales compuesta por ambos<br><br>    Recurridos<br><br>        v.<br><br>Isabel Passalacqua, Michael J. Passalacqua y la Sociedad Legal de Gananciales compuesta por ambos<br><br>    Peticionarios | CC-2025-0062 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 24 de febrero de 2026.

El recurso ante nuestra consideración nos permite expresarnos sobre el alcance de una cláusula de opción subsumida en un contrato de arrendamiento. En específico, hoy debemos puntualizar las obligaciones del arrendador frente al arrendatario una vez pactada la mencionada cláusula.

Adelantamos que, cónsono con lo dispuesto en el Código Civil de 2020, *infra*, y la jurisprudencia aplicable, luego de pactada la cláusula de opción para extender el contrato de arrendamiento, el arrendador está obligado a conceder de manera inalterada, la totalidad del plazo acordado con el arrendatario para ejercer unilateralmente su derecho de opción. Es decir, mediando una cláusula de opción, el arrendador no podrá arrendar la propiedad a un tercero, salvo

en aquellas ocasiones donde se extinga el derecho del arrendatario a ejercer la opción. Veamos.

I

La génesis de la presente controversia data al 28 de diciembre de 2020. En esa fecha, el matrimonio Conklin (Recurridos)[1] y la Sra. Isabel Passalacqua (Peticionaria) suscribieron un Contrato de arrendamiento titulado *Residential Lease Agreement* (Contrato) por el término de un año.[2] Ahora bien, de particular importancia para la controversia que nos ocupa es que, como parte del Contrato suscrito entre las partes, se incluyó un pacto de cláusula de opción. Es decir, la Peticionaria (quien figura como concedente, promitente u optataria) se obligó con el matrimonio Conklin (los optantes) a concederles la facultad unilateral de extender el arrendamiento por un año adicional; siempre y cuando lo expresaran durante la vigencia del contrato.

Así las cosas, y transcurrido ya un poco más de 10 meses desde la fecha que el Contrato entró en vigor, el 16 de diciembre de 2021, la Peticionaria inquirió con el matrimonio Conklin sobre su interés en ejercer su derecho a extender el arrendamiento por el término pactado. Según dispone el Contrato, los Recurridos tendrían la oportunidad de extender

---

[1] El Sr. Dennis R. Conklin y la Sra. Rosemarie Conklin, casados entre sí bajo el régimen de sociedad legal de gananciales.

[2] Cabe destacar que, si bien es cierto que el Contrato se suscribió el 28 de diciembre de 2020, no fue hasta el 1 de febrero de 2021 que entró en vigor.

el arrendamiento (es decir, ejercitar su derecho a opción) durante el año que el Contrato estuviese en vigor.[3]

Como corolario de lo anterior, ese mismo día, los Recurridos se limitaron a responder que lo estaban considerando y que prontamente le notificarían su decisión. Ello se debió a que, según obra del expediente, no entendían que hubiese urgencia en responder, puesto que les restaban básicamente dos meses para ejercer su derecho de extender el Contrato de arrendamiento.

Ahora bien, el 28 de diciembre de 2021, 34 días antes de que se extinguiera el derecho a ejercer la opción, y previo a que el matrimonio Conklin pudiese expresar su interés en permanecer en la propiedad por un año adicional, la señora Passalacqua les envió un mensaje de texto adicional. Esta vez les notificó a los Recurridos que no les extendería el Contrato y que tendrían que abandonar la propiedad tan pronto finalizara el periodo inicial de un año (el 31 de enero de 2022).

Impactados con la noticia, los Recurridos expresaron que se les haría imposible abandonar la propiedad en la fecha indicada, máxime cuando restaba más de un mes para que estos ejercitaran su derecho de opción. No empece lo anterior, inicialmente el matrimonio Conklin se limitó a solicitarle a

---

[3] La cláusula 17 del Contrato dispone que: "*The Lessee has the option to renew as of February 1st, 2021 at Three Thousand Two Hundred ($3,200) per month for an additional 12 month term (utilities not included)*" (El arrendatario tiene la opción de renovar a partir del 1 de febrero de 2021 y, por la cantidad de tres mil doscientos dólares, por un término adicional de 12 meses (sin incluir las utilidades)).

la Peticionaria que les permitiera permanecer en la propiedad por un solo mes posterior al vencimiento del Contrato. Sin embargo, la señora Passalacqua les respondió que permanecer en el apartamento no sería posible. Adujo que se había comprometido con otra persona para arrendarle la propiedad.

Como resultado de lo anterior, los Recurridos abandonaron la propiedad y, posteriormente, acudieron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, para presentar una *Demanda* por Incumplimiento de Contrato y Daños y Perjuicios. En esa *Demanda*, el matrimonio Conklin trajo a colación los daños sufridos como resultado del incumplimiento de la Peticionaria con el pacto de cláusula de opción acordado en el Contrato de arrendamiento.

Luego de una serie de incidentes procesales, el foro de primera instancia emitió una *Sentencia* en la que atendió la *Moción solicitando sentencia sumaria parcial* que presentó el matrimonio Conklin y que iba dirigida exclusivamente al incumplimiento contractual de la Peticionaria. Para arribar a su conclusión, el foro primario también tomó en consideración la *Moción en oposición* que presentó la señora Passalacqua.

En suma, el foro de primera instancia determinó que, en efecto, los Recurridos contaban con una cláusula de opción que les permitía extender el Contrato de arrendamiento por un año adicional. Ello se debió a que en el Contrato estaban presente los siguientes requisitos: (1) concesión de modo exclusivo al optante arrendatario sobre la renovación del Contrato; (2) concesión que, a su vez, no está sujeta a ninguna condición

que no sea la propia voluntad del optante arrendatario; y (3) un plazo cierto para ejercer la opción.

Añadió el juzgador de instancia que, como se podía apreciar en el Contrato, la cláusula 17 le concedía al matrimonio Conklin el derecho a optar por extender el Contrato de arrendamiento por 12 meses adicionales. Además, enfatizó que el ejercicio del derecho de opción le correspondía únicamente a los Recurridos y no a la señora Passalacqua. Por lo tanto, el matrimonio Conklin tenía hasta el vencimiento del Contrato de arrendamiento el 31 de enero de 2022, para ejercer la opción de extenderlo.

No obstante lo anterior, en su *Sentencia*, el juzgador de instancia determinó que cuando la señora Passalacqua les preguntó a los Recurridos sobre su interés en ejercer su derecho de opción, estos no realizaron "ninguna gestión afirmativa" dirigida al ejercicio de esa prerrogativa. Razón por la cual, el foro de primera instancia determinó que la opción de extender el Contrato se extinguió.

El Tribunal de Primera Instancia también evaluó el argumento de los Recurridos en cuanto a que la señora Passalacqua incumplió el Contrato, toda vez que llevó a cabo negociaciones con un tercero previo a que culminara el periodo de un año que tenía el matrimonio Conklin para ejercer su derecho de opción. Sobre ese particular, el juzgador de instancia concluyó que, toda vez que los Recurridos no realizaron "gestiones afirmativas" dirigidas a la renovación del Contrato, nada impedía que la Peticionaria arrendara la

propiedad a un tercero. Consecuentemente, el foro de primera instancia declaró Ha Lugar la *Moción en oposición* que presentó la señora Passalacqua y, como resultado de ello, desestimó con perjuicio la *Demanda* que presentó el matrimonio Conklin.

Inconforme con esa determinación, los Recurridos acudieron al Tribunal de Apelaciones e imputaron al juzgador de instancia la comisión de los siguientes errores: (1) determinar que el incumplimiento de la señora Passalacqua ocurrió una vez había vencido el Contrato de arrendamiento y no durante la vigencia de este; (2) determinar que la parte Peticionaria no incumplió con el Contrato de arrendamiento, aun cuando no honró el período de deliberación concedido a los Recurridos; (3) determinar que la señora Passalacqua no incumplió con el Contrato de arrendamiento, motivo por el cual procedía desestimar la demanda; y (4) al no dictar sentencia parcial a favor del matrimonio Conklin y desestimar la demanda.

Luego de evaluar los escritos de las partes, el foro apelativo intermedio emitió una *Sentencia* en la que revocó el dictamen apelado. En síntesis, a diferencia del foro de primera instancia, el Tribunal de Apelaciones concluyó que la conducta de la señora Passalacqua violentó su obligación negativa de no arrendar la propiedad a un tercero mientras estuviera vigente la opción de arrendamiento. Ello se debió a que, según la cláusula 17 del Contrato de arrendamiento, el matrimonio Conklin tenía hasta el 31 de enero de 2022 para

decidir, a su exclusivo arbitrio, si renovaban el Contrato de arrendamiento.

Por último, el foro apelativo intermedio expresó que, conforme a lo pactado, la facultad de ejercitar la opción era exclusiva de los Recurridos, siempre y cuando no hubiese transcurrido el término fijo pautado en el Contrato. Debido a ello, concluyó que el comportamiento atropellado de la Peticionaria constituía un incumplimiento de la cláusula de opción incluida en el Contrato de arrendamiento. Eso, según dicho foro, acarreaba como consecuencia inescapable la indemnización de los daños sufridos por el matrimonio Conklin.

En desacuerdo con la determinación del Tribunal de Apelaciones, acude ante nos la señora Passalacqua por conducto de un recurso de *Certiorari* en el que señaló la comisión de los siguientes errores: (1) que en su *Sentencia*, el foro apelativo intermedio aplicó el derecho a hechos que no surgían del expediente judicial; (2) que erró al determinar que los Recurridos no tuvieron oportunidad de ejercer su derecho de opción; y (3) que erró al declarar ha lugar la *Moción de sentencia sumaria parcial* que presentó el matrimonio Conklin.

Expedido el recurso de *Certiorari* y contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver, no sin antes examinar el Derecho aplicable a la controversia.

## II

**A. El mecanismo de la sentencia sumaria**

La sentencia sumaria es un mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio en su fondo.[4] Se consideran hechos materiales aquellos que potencialmente puedan afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable.[5]

Este mecanismo emana de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, y permite que cualquiera de las partes en un litigio solicite que el tribunal dicte sentencia (por la vía sumaria) a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Además, hemos expresado que solo procede dictar sentencia sumaria cuando surge de manera clara que el promovido por la solicitud no prevalecerá bajo ningún supuesto de hechos.[6] Ello, debido a que si hay una disputa real y sustancial sobre la existencia de algún hecho material, el tribunal se debe apartar de la adjudicación sumaria.

En suma, una moción de sentencia sumaria no procederá cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda

---

[4] *Nieves Díaz v. González Massas*, 178 DPR 820 (2010) citando a *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154 (2005).

[5] *Bobé et al. v. UBS Financial Services*, 198 DPR 6 (2017).

[6] *Nieves Díaz v. González Massas, supra*, pág. 848.

que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) no proceda como cuestión de derecho.[7]

Ahora bien, sobre el alcance de la revisión judicial, hemos expresado reiteradamente que los foros revisores nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria.[8] En vista de ello, los tribunales apelativos están llamados a "examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias" que surgen de la Regla 36 de Procedimiento Civil, *supra*.[9] Para ello, es indispensable "analizar tanto los documentos que acompañan la solicitud como los documentos de la oposición para determinar si existe o no controversia de hechos".[10] En ese proceder, si se concluye que los hechos materiales están verdaderamente incontrovertidos, entonces corresponde revisar si el foro primario aplicó correctamente el derecho.[11]

**B. Teoría general de los contratos**

Los contratos constituyen una fuente de las obligaciones en el ordenamiento jurídico puertorriqueño.[12] Además, conforme al principio contractual de *pacta sunt servanda*, los

---

[7] *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133 (2011).

[8] *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023).

[9] *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010 (2020).

[10] *Rosado Reyes v. Global Healthcare*, 205 DPR 796 (2020).

[11] *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019).

[12] Art. 1063 del Código Civil de 2020, 31 LPRA sec. 8984.

contratos tienen fuerza de ley entre las partes.[13] Debido a ello, **"[c]uando las personas contratan[,] crean normas obligatorias; tan obligatorias como la ley misma"**.[14] Igualmente, las relaciones contractuales que se forman por virtud de estos contratos se rigen por el principio de la autonomía de la voluntad que emana del Art. 1232 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9753 (Código Civil). Según este, "[l]as partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público".[15]

Ahora bien, una vez los tribunales se enfrenten a la ardua tarea de interpretar las cláusulas de los acuerdos suscritos entre los contratantes, el Código Civil dispone que "[s]i los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras".[16] Así, hemos expresado que en nuestro ejercicio interpretativo, "se debe seguir la letra clara del contrato, cuando ésta refleja inequívocamente la voluntad de las partes".[17]

Cónsono con lo anterior, este Tribunal ha expresado que las normas que rigen las relaciones contractuales "convergen con el principio de la buena fe contractual, el cual está

---

[13] Art. 1233 del Código Civil de 2020, 31 LPRA sec. 9754; *UIA v. Santander Securities LLC*, 214 DPR 601 (2024).

[14] Énfasis Suplido. J.R. Vélez Torres, *Derecho de contratos*, San Juan, Ed. Revista Jurídica UIPR, 1990, T. IV, Vol. II, pág. 99.

[15] Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753.

[16] Art. 354 del Código Civil de 2020, 31 LPRA sec. 6342.

[17] *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 726 (2001).

latente en todo nuestro ordenamiento".[18] Así, pues, "al momento de interpretar un contrato es preciso presuponer lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas".[19] Por tal razón, **los tribunales no deben relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato, cuando dicho contrato es legal y válido y no contiene vicio alguno.**[20]

En lo que atañe a este caso en particular sobre la validez y eficacia de la obligación, debemos detenernos brevemente en lo que nuestra jurisprudencia llama las **obligaciones de no hacer**. Según dispone el Código Civil de 2020, "[l]a obligación de no hacer impone al deudor el deber de abstenerse de realizar algo que, de no existir la prohibición, podría hacer libremente, o el deber de tolerar una actividad ajena".[21] Sobre este particular, en el Memorial Explicativo del Borrador del Código Civil de 2020, el legislador explicó que este tipo de obligación impone en el deudor un comportamiento negativo, una omisión o abstención de actos materiales o jurídicos. Añade que la omisión que emana de esta obligación puede tener dos vertientes: (1) la simple inactividad; o (2) que el deudor no ponga obstáculos o permita una actividad del acreedor.

---

[18] *VDE Corporation v. F&R Contractors*, 180 DPR 21 (2010).

[19] *S.L.G. Irizarry v. S.L.G. García*, *supra*, en la pág. 726.

[20] *Matos, González v. S.L.G. Rivera-Freytes*, 181 DPR 835, 852 (2011).

[21] Art. 1081 del Código Civil de 2020, 31 LPRA sec. 9016.

Conforme a lo anterior, en caso de que el deudor de una obligación de no hacer se aparte de lo acordado, el Código Civil de 2020 dispone que el incumplimiento confiere al acreedor el derecho "a requerir las medidas cautelares apropiadas para impedir que el incumplimiento continúe, exigir que se deshaga lo indebidamente hecho, si se puede deshacer, y en ambos casos a **exigir la indemnización de los daños y perjuicios resultantes**".[22]

Habida cuenta de la importancia en acatarse a lo acordado en los contratos, siendo esta la ley entre las partes, y las particularidades respecto a las obligaciones de no hacer, pasemos ahora a evaluar la normativa referente al derecho de opción.

**C. Las cláusulas de opción**

Como regla general, al estudiar el derecho de opción, nos hemos limitado a hacer referencia al Contrato de Opción. No obstante, este Contrato no aparece codificado en el Código Civil de 2020. Razón por la cual, lo hemos definido como el "convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal".[23]

---

[22] Énfasis Suplido. Art. 1082 del Código Civil de 2020, 31 LPRA sec. 9017.

[23] In re Chaves Torres, 215 DPR ___ (2025), 2025 TSPR 32 citando a *P.D.C.M. Assoc. v. Najul Bez*, 174 DPR 716, 724 (2008); *Mayaguez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002).

Ahora bien, lo cierto es que en nuestra jurisprudencia se ha estudiado vastamente el "Contrato de opción". A pesar de lo anterior, en el caso ante nuestra consideración nos enfrentamos más bien a una "cláusula de opción" accesoria a un Contrato de arrendamiento.[24] Debido a ello, en lugar de hablar de un Contrato de opción, haremos referencia a un Contrato con cláusula de opción.

Aclaramos que, al igual que en el Contrato de opción, en aquellos contratos que se incluya una cláusula de opción, la parte concedente de la opción (el arrendador en un contrato de arrendamiento) queda obligada de manera incondicionada, aunque solo por un breve plazo, a esperar la decisión de la otra parte (la arrendataria).[25] Así, la opción no solo concede al optante la facultad de perfeccionar el Contrato principal mediante la aceptación de la opción, sino que impone al concedente la obligación de no frustrar el derecho del que goza el optante.[26]

Como consecuencia de lo anterior, pactada una cláusula de opción, no solo tendrá el optante la facultad de resolver acerca de su ejercicio, sino que gozará de la **importante obligación negativa (o de no hacer) que incumbe al concedente de no celebrar Contrato alguno con terceros** que pueda resultar

---

[24] Véase J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 50.

[25] Íd. pág. 52.

[26] *P.D.C.M. Assoc. v. Najul Bez*, *supra*, págs. 724-725; *Mayaguez Hilton Corp. v. Betancourt*, *supra*, pág. 250. *Véase*, además, J. Castán Tobeñas, *Derecho civil español, común y foral*, 14ta ed., Madrid, Ed. Reus, 1993, T. IV, págs. 54-55.

incompatible con el derecho del optante.[27] Así, según añade Castán Tobeñas, entre los efectos más destacados del derecho de opción, es que previo a que transcurra la totalidad del plazo acordado, **el concedente del derecho está vinculado por la cláusula acordada y, consecuentemente, no puede hacer nada que pueda frustrar la efectividad de esta.**[28]

Tomando en cuenta el hecho de que el optatario no puede interponerse con el derecho que tiene el optante, es menester aclarar la forma de ejercer el derecho de opción y el plazo para hacerlo. En primer lugar, la declaración del optante es de carácter unilateral y, a su vez, no está sujeta a forma expresa.[29] **Es decir, salvo pacto en contrario, el optatario puede ejercer su derecho de opción de la forma que prefiera; ya sea verbal o escrita.** Sobre este particular, hemos expresado que, siguiendo el principio de la autonomía de la voluntad contractual, los contratantes pueden acordar, además del plazo en el cual se podrá ejercer la opción, la forma como deberá ejercerse.[30]

Por último, en cuanto a las distintas formas en las que se extingue el derecho de opción, la manera principal en que este queda extinto es el ejercicio positivo; entiéndase, ejerciendo el derecho y quedando entonces perfeccionado el

---

[27] J. Puig Brutau, *supra.*, pág. 54.

[28] J. Castán Tobeñas, *supra.*, págs. 54-55.

[29] J. Puig Brutau, *supra.*, pág. 57.

[30] *Véase*, la opinión de conformidad en Matos, González v. SLG Rivera-Freytes, *supra.*

Contrato aceptado.[31] De otra parte, **el optante también pierde el derecho si permite que transcurra la totalidad del plazo concedido para optar sin hacer ninguna manifestación**, o haciendo alguna que tenga la eficacia de una renuncia del derecho.[32] Finalmente, la opción puede extinguirse por acuerdo entre el concedente de la opción y el titular del derecho.[33]

## III

A modo de repaso, la Peticionaria acudió ante nos por su inconformidad con la determinación del Tribunal de Apelaciones en cuanto a su cumplimiento con la cláusula de opción incluida en el Contrato de arrendamiento pactado con el matrimonio Conklin. En específico, la señora Passalacqua le imputó al foro apelativo intermedio tres errores; a saber: (1) que en su *Sentencia*, aplicó el derecho a hechos que no surgían del expediente judicial; (2) que erró al determinar que los Recurridos no tuvieron oportunidad de ejercer su derecho de opción; y (3) que erró al declarar ha lugar la *Moción de sentencia sumaria parcial* presentada por el matrimonio Conklin.

En relación con el primer señalamiento de error, la señora Passalacqua aduce que el foro apelativo intermedio revocó la *Sentencia* del Tribunal de Primera Instancia sin tener un fundamento fáctico o jurídico que lo sustentara. Según la Peticionaria, dicho foro abusó de su discreción, toda

---

[31] J. Puig Brutau, *supra.*, pág. 64.

[32] Íd.

[33] Íd., pág. 65.

vez que consideró un hecho material que alegadamente no surge del expediente judicial. En específico, se trata del siguiente hecho: "tres (3) días más tarde, la señora Passalacqua le notificó a la señora Conklin que había alquilado el apartamento a un tercero".[34] No le asiste la razón.

Luego de revisar la *Sentencia* emitida por el Tribunal de Primera Instancia, es cierto que el foro primario incluyó, como un hecho material sobre el cual no hay controversia sustancial, lo siguiente: "La Parte Demandada indicó que "ya tenía a otro inquilino que estaría firmando Contrato el 1 de febrero de 2022".[35] Igualmente, el foro apelativo intermedio transcribió y consideró el hecho material tal y como fue dispuesto por el foro primario.

No obstante lo anterior, si bien es cierto que el Tribunal de Apelaciones no incurrió en la falta imputada por la Peticionaria, este sí utilizó las palabras señaladas. El foro apelativo intermedio expuso en la parte 3 de la *Sentencia* que la conducta de la Peticionaria violentó su importante obligación negativa de no entrar en negociaciones con un tercero durante la vigencia del derecho de opción que ostentaba el matrimonio Conklin. Además, la evidencia de esas negociaciones surge del mensaje de texto en el que la señora Passalacqua expresó que no les iba a renovar el Contrato de

---

[34] *Apéndice del Certiorari,* pág. 200.

[35] Íd., pág. 7.

arrendamiento a los Recurridos debido a que contaba con un tercero que estaba listo para arrendar la propiedad.

Pasemos al segundo señalamiento de error. Según la Peticionaria, el matrimonio Conklin no enfrentó impedimento alguno en su ejercicio del derecho de opción que gozaba por virtud de la cláusula de opción en el Contrato de arrendamiento. Nuevamente, esa apreciación es incorrecta.

En el recuento fáctico que antecede expusimos que los Recurridos pactaron con la señora Passalacqua una cláusula de opción que les facultaba, unilateralmente, a extender el Contrato de arrendamiento por un año adicional, siempre que lo expresaran dentro del plazo de vigencia de la opción (del 1 de febrero de 2021 al 31 de enero de 2022).

Conforme a lo anterior, en nuestro ejercicio de evaluar si el matrimonio Conklin tuvo la oportunidad de ejercer su derecho de opción, nos remitimos a los hechos sobre los cuales el foro de primera instancia determinó que no existía controversia. Por ejemplo, en la determinación de hecho número 10, el foro primario expuso que: **"el 16 de diciembre de 2021, cuando el Contrato estaba por expirar, [el matrimonio Conklin] recibió un mensaje de texto de la [señora Passalacqua] en la cual le preguntaban sobre su intención de ejercer la opción de renovar o no el Contrato"**.[36] Inmediatamente después, la determinación de hecho número 11 reza que: **"El mismo 16 de diciembre de 2021, [el matrimonio Conklin] contestó a la**

---

[36] *Apéndice del Certiorari,* pág. 6.

**[señora Passalacqua] lo siguiente: "Lo estoy considerando ahora mismo y te dejaré saber pronto".**[37]

Hasta el hecho incontrovertible número 10, la Peticionaria no había obstaculizado de forma alguna el derecho de opción del matrimonio Conklin, sino que se limitó a auscultar el interés de los Recurridos en extender el arrendamiento. Empero, el problema estriba de la determinación de hecho número 13, la cual dispone lo siguiente: **"La [señora Passalacqua] le envió un mensaje de texto a [el matrimonio Conklin] el 28 de diciembre de 2021, que indicaba lo siguiente: "Buenos Días, Dennis y Rosie. Le estamos dando un aviso de 30 días. No les estaremos renovando el Contrato de arrendamiento a partir del 31 de enero de 2022. Favor de tener el apartamento vacío para entonces. Gracias por su inquilinato y les deseamos lo mejor".**[38]

Según repasamos en la Sección anterior, **la expresión de la señora Passalacqua al matrimonio Conklin de que no les estaría renovando el Contrato de arrendamiento y, por consiguiente, que tendrían que abandonar la propiedad el 31 de enero de 2022, está en contravención con las limitaciones que nuestro ordenamiento jurídico le impone al concedente de un derecho de opción.** Ello debido a que el derecho a opción se caracteriza por brindarle al optante, en este caso el

---

[37] *Apéndice del Certiorari,* pág. 6. Traducción nuestra. El texto original reza lo siguiente: ("Thinking about it now and will let you know soon").

[38] *Íd.* Traducción nuestra. El texto original reza lo siguiente: ("Good Morning, Dennis and Rosie. We are giving you 30 day notice. We will not be renewing the lease after January 31st, 2022. Please have the apartment vacated by then. Thank you for your tenancy and we wish you well").

matrimonio Conklin, la facultad de decidir unilateralmente la celebración de un Contrato (el de arrendamiento). Especialmente, sin una intervención indebida por parte del optatario (la Peticionaria) que frustre ese derecho.

En vista de lo anterior, **informarle al matrimonio Conklin que no podrían ejercer su derecho de opción por haber acordado con un tercero el arrendamiento de la propiedad, sin lugar a duda frustró la oportunidad de los Recurridos de ejercer la opción.** Máxime, cuando les restaba más de un mes para ejercer su derecho de opción. Por tal razón, se equivocó la señora Passalacqua al concluir que el matrimonio Conklin tuvo la oportunidad de ejercer su derecho.

Similar al argumento de la Peticionaria, el Tribunal de Primera Instancia concluyó que el matrimonio Conklin tuvo la oportunidad de ejercer su derecho a la opción, pero que no realizó gestiones afirmativas atinentes a la consecución de tal derecho. Al igual que la señora Passalacqua, **el foro de primera instancia erró en su apreciación de cómo opera la cláusula de opción suscrita entre las partes.** Enfatizamos que **aquella persona que, en calidad de optante, goce de un derecho de opción, <u>no tiene la obligación de realizar gestión afirmativa alguna más allá de ejercer (si así lo desea) su derecho dentro del término pactado</u>.** Así, pues, sin que se extinga el derecho de opción, el optatario no puede intervenir ni exigir que el optante acepte previo a que culmine el plazo acordado.

Nos resta atender el tercer y último señalamiento de error. Según este, la Peticionaria expresó que erró el foro apelativo intermedio al conceder la *Moción de sentencia sumaria parcial* que presentó el matrimonio Conklin y devolver el caso al Tribunal de Primera Instancia para que determine el monto de los alegados daños. De entrada, concluimos que no le asiste la razón y, contrario a lo aducido por la señora Passalacqua, el Tribunal de Apelaciones emitió su dictamen conforme a derecho.

Como adelantamos, al evaluar una sentencia sumaria, los foros revisores deben analizar tanto los documentos que acompañan la solicitud, como los documentos de la oposición, para determinar si existe o no una controversia real de hechos. Si el Tribunal Apelativo en cuestión concluye que los hechos materiales están verdaderamente incontrovertidos, entonces le corresponderá revisar si el foro primario aplicó correctamente el derecho. Eso fue precisamente lo que hizo el Tribunal de Apelaciones en el caso ante nuestra consideración.

Ahora bien, en el ejercicio de revisión del derecho que realizó el foro apelativo intermedio, concluyó que erró el Tribunal de Primera Instancia al dictar una *Sentencia* en contra de los Recurridos. Específicamente, por el hecho de que el matrimonio Conklin contaba con una cláusula de opción a su favor que se frustró al momento en que la Peticionaria le comunicó que no podrían extender el arrendamiento y que tendrían que abandonar la propiedad.

En cuanto a la devolución del caso al foro de primera instancia para la imposición de los daños correspondientes, lo cierto es que en contra de la Peticionaria pesaba una obligación de no hacer que esta quebrantó. En vista de ello, conforme al Art. 1082 del Código Civil de 2020, en caso de incumplimiento, el acreedor de una obligación de no hacer (en este caso, el matrimonio Conklin) tiene derecho "a requerir las medidas cautelares apropiadas para impedir que el incumplimiento continúe, exigir que se deshaga lo indebidamente hecho, si se puede deshacer, y en ambos casos a **exigir la indemnización de los daños y perjuicios resultantes**".[39]

Por todo lo anterior, tal y como concluyó el Tribunal de Apelaciones, procede devolver el caso al Tribunal de Primera Instancia para que lleven a cabo los procedimientos necesarios conducentes a la imposición de los daños correspondientes.

## IV

Por los fundamentos expuestos, se confirma la *Sentencia* emitida por el Tribunal de Apelaciones. Conforme a ello, se declara ha lugar la *Moción de sentencia sumaria parcial* presentada por el matrimonio Conklin y se resuelve que la señora Passalacqua incumplió con la cláusula de opción del Contrato de arrendamiento suscrito entre las partes. Devolvemos el caso al Tribunal de Primera Instancia para que

---

[39] Art. 1082 del Código Civil de 2020, 31 LPRA sec. 9017.

continúe con los procedimientos de conformidad con lo aquí resuelto.

Se dictará Sentencia en conformidad.


                                        Erick V. Kolthoff Caraballo
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Dennis R. Conklin, Rosemarie Conklin y la Sociedad Legal de Gananciales compuesta por ambos<br><br>    Recurridos<br><br>        v.<br><br>Isabel Passalacqua, Michael J. Passalacqua y la Sociedad Legal de Gananciales compuesta por ambos<br><br>    Peticionarios | CC-2025-0062 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 24 de febrero de 2026.

Por los fundamentos antes expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se confirma la *Sentencia* emitida por el Tribunal de Apelaciones. Conforme a ello, se declara ha lugar la *Moción de sentencia sumaria parcial* presentada por el matrimonio Conklin y se resuelve que la señora Passalacqua incumplió con la cláusula de opción del Contrato de arrendamiento suscrito entre las partes. Devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de conformidad con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco hace constar la expresión siguiente a la cual se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Martínez Torres:

Disiento de la Opinión emitida por este Tribunal. Una lectura íntegra de los autos permite concluir que los arrendatarios nunca expresaron concretamente su interés de ejercer la opción de renovar el Contrato de alquiler durante el plazo acordado luego de que la arrendadora notificara que se proponía a arrendar a otra

persona. Tampoco la arrendadora celebró un contrato con terceros previo a culminar este plazo que frustrara el efectivo ejercicio del derecho del optante.

Nuestro ordenamiento jurídico requiere que las cláusulas de un contrato sean analizadas en conjunto y presumiendo la buena fe de ambas partes. Arts. 354 y 356 del Código Civil, 31 LPRA secs. 6341 y 6344. En primer lugar, el Contrato permitía a los arrendadores mostrar y publicar la propiedad desde sesenta (60) días antes de su vencimiento. Asimismo, la Cláusula 17 del Contrato en la que se centra la Opinión del Tribunal atendía dos posibles situaciones. Por un lado, autorizaba a los arrendatarios a ejercer una opción de alquiler por un término adicional de doce (12) meses. Por otro lado, les permitía alquilar la propiedad mes tras mes, siempre y cuando obtuvieran la aceptación de los arrendadores. Surge del expediente que los arrendatarios solo comunicaron su deseo de alquilar mes tras mes, pues deseaban mudarse a otra residencia que habían comprado y cuya remodelación culminaría pocos meses después. Sin embargo, esta opción no fue aceptada por los arrendadores. Por el contrario, los arrendatarios no exigieron ejercer su derecho de opción. Art. 1082 del Código Civil, 32 LPRA sec. 90170.

Surge, además, que al momento de los arrendatarios abandonar la propiedad no se había celebrado contrato alguno con tercero. En particular, se desprende:

> "15. Que ya para el 13 de enero de 2022 [fecha de la mudanza de los arrendatarios] con nuestra ayuda, esfuerzo y buena fe, le conseguimos a la Parte Demandante un nuevo lugar para arrendar. […] 16. Que para el 13 de enero de 2022 no se había firmado contrato de arrendamiento con ninguna otra parte". Declaración Jurada del Matrimonio Passalacqua, Apéndice, pág. 99.

Por lo tanto, considero correcta la determinación del foro primario en que "venciendo el término original del contrato de arrendamiento

el 31 de enero de 2022, y no habiendo expresado los arrendatarios su deseo de ejercer la opción de renovar el contrato, el arrendador tenía derecho a arrendar el apartamento a otro inquilino desde el 1 de febrero de 2022". Sentencia del Tribunal de Primera Instancia, Apéndice, pág. 18.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo