ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| CALEB MATÍAS RIVERA<br><br>APELANTE<br><br>V.<br><br>ADT PUERTO RICO, LLC<br><br>APELADOS | TA2026AP00281 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Caso Núm. SJ2023CV05422<br><br>Sobre:<br>Despido Injustificado (Procedimiento Sumario) |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de abril de 2026.

Comparece ante nos, el señor Caleb Matías Rivera (en adelante "el apelante"). Solicita nuestra intervención para que dejemos sin efecto la *"Sentencia"* emitida el 6 de marzo de 2026 y notificada el 9 del mismo mes y año. Mediante esta, el foro primario dispuso sumariamente del caso y determinó que el despido del apelante fue justificado. En consecuencia, desestimó la *"Querella"* instada por el apelante en contra de ADT Puerto Rico, LLC (en lo sucesivo, "la parte apelada").

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

**I.**

El 6 de junio de 2023, el apelante presentó la *"Querella"* de epígrafe. En esencia, instó una causa de acción por despido injustificado a través del procedimiento expedito estatuido en la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, según emendada, 32 LPRA sec. 3118 et seq. Indicó, que trabajo para la parte apelada hasta el 1 de mayo de 2023, fecha en que fue

despedido sin mediar justificación. Ante ello, solicitó el pago de la mesada dispuesta en la referida Ley y que se le ordene a la parte apelada el pago de honorarios de abogado.

En respuesta, el 26 de junio de 2023, la parte apelada presentó *"Contestación a la Querella."* En síntesis, negó que haya despedido al apelante de manera injustificada. Por el contrario, arguyó que el apelante fue despedido por la razón justificada de una reducción del personal del negocio según es permitido por la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a et seq.  En vista de lo anterior, sostuvo que al apelante no le corresponde indemnización alguna.

Tras varios trámites procesales que no son necesarios de pormenorizar, el 2 de agosto de 2024, el tribunal de instancia le requirió a las partes que en un término de quince (15) días informaran si el descubrimiento de prueba había concluido. En cumplimiento de ello, el 19 de agosto de 2024, la parte apelada indicó su posición de que el descubrimiento de prueba había finalizado. Así las cosas, el 21 de agosto de 2024, el foro primario notificó que dio por concluido el descubrimiento de prueba del caso. Determinó, que "[e]n vista de que la parte querellante no compareció en el término concedido para informar sobre el descubrimiento de prueba, se decreta concluido y cerrado."

Posteriormente, el 20 de septiembre de 2024, la parte apelada presentó *"Moción de Sentencia Sumaria."*[1] Mediante esta, solicitó que se dispusiera sumariamente del pleito a su favor y en consecuencia se desestime la acción entablada en su contra. Fundamentó su petición bajo el argumento de que los hechos materiales del caso no están en controversia. Sostuvo, entre otras cosas, que no existe controversia sobre

---

[1] La parte apelada acompañó su moción con la siguiente prueba documental: "Deposición de sr, Caleb Matías Rivera;" "Contestación a Primer Pliego de Interrogatorio, Requerimiento de Producción de Documentos;" "Reduction in Force Evaluation Form;" "Agreement for Subcontracting Services;" "Statement Under Penalty of Perjury;" Declaración Jurada suscrita por la señora Erika Torres Matos; Correo electrónico dirigido al señor Caleb Matías del 27 de marzo de 2023; "Performance Improvement Plan" del 15 de agosto de 2018; "Coaching for Improvement;" "Performance Improvement Plan" del 23 de marzo de 2017; Correo electrónico del 3 de mayo de 2023; "Older Workers Benefit Protection Act Disclosure"

que el apelante trabajó en su empresa. A su vez, indicó que tampoco hay controversia sobre que la empresa determinó reducir los costos y el personal de algunas de sus localidades. Sobre el particular, adujo que la reducción de personal no solo ocurrió en Puerto Rico sino también en diecinueve (19) Estados de los Estados Unidos.

Además, argumentó que es un hecho incontrovertido que los empleados despedidos fueron seleccionados a tenor de un análisis enfocado en su productividad, calidad, conocimiento y otros aspectos relacionados a su ejecución laboral. En específico, aseveró que el apelante fue candidato para el despido por haber obtenido una puntuación de 2.2 de 3.0; por tener varias acciones disciplinarias en su contra; y por ser el empleado menos antiguo dentro del puesto de Técnico de Servicio III. Añadió, que la referida puntuación fue la más baja de todos los Técnicos de Servicio III. En virtud de lo expuesto, reafirmó la existencia de justa causa para el despido del apelante.

En reacción, el 23 de octubre de 2024, el apelante presentó *"Moción en Oposición a Solicitud de Sentencia Sumaria."*[2] En síntesis, apoyó su oposición bajo el argumento de que la parte apelada no había sometido suficiente evidencia que demostrara la existencia de hechos esenciales no controvertidos y la legalidad de su despido. Además, aseveró que los planteamientos de reducción de personal y de costos debían demostrarse mediante prueba pericial. Indicó, que la parte apelada no había presentado ni anunciado la presentación de ese tipo de prueba. A su vez, arguyó, que contrario a lo aducido por la parte apelada, él tenía basto conocimiento de las funciones de su trabajo y realizaba una excelente labor. Cónsono con lo anterior, esgrimió que durante su tiempo de empleo solo había tenido una acción correctiva y era el empleado más antiguo de su departamento.

---

[2] El apelante acompañó su moción en oposición con la siguiente prueba documental: fotografía de una Declaración Jurada suscrita por Caleb Matías Rivera; "Contestación a la Querella;" "Informative Income Tax Return" del año 2021; "Informative Income Tax Return" del año 2022; Imagen a color intitulada: "Fourth Quarter & 2023 Highlights."

Tras evaluar los escritos presentados por las partes, el 9 de marzo de 2026, el foro primario notificó la *"Sentencia"* que hoy es objeto de revisión. Mediante esta, dispuso sumariamente del caso y determinó que el despido del apelante fue justificado. En consecuencia, desestimó la *"Querella"* instada por el apelante.

A su vez, el foro sentenciador esbozó las siguientes determinaciones de hechos incontrovertidos:

1. El Sr. Caleb. Matías Rivera es mayor de edad y residente de Toa Alta.

2. ADT Puerto Rico, LLC está dedicado al negocio de proveer productos y servicios en las áreas de seguridad residencial y comercial, como también otros servicios y productos, incluyendo seguridad para asuntos de salud y la población envejeciente.

3. Matías Rivera prestó servicios para ADT desde el desde el 22 de septiembre de 2010 hasta el 1 de mayo de 2023, cuando ADT le notificó su despido.

4. Durante su empleo con ADT, el Querellante ocupó varias posiciones, comenzando como instalador y hasta ocupar la posición de Técnico de Servicio III (Technician III – Service).

5. En dicha posición, los deberes de Matías Rivera incluían identificar y resolver problemas con equipos y cableado; reparar, reajustar y reemplazar equipo inoperativo y verificar el funcionamiento adecuado; leer e interpretar planos, planos de construcción y planos eléctricos para realizar las reparaciones; preparar formularios para reportar reparaciones; coordinar inspecciones y/o instalaciones con las agencias competentes; y realizar todas las funciones y tareas asignadas y establecidas por sus supervisores, entre otras.

6. A principios de 2023, ADT empleaba a diez personas en las posiciones de técnicos de servicio e instaladores, incluyendo a Matías Rivera.

7. Por lo menos desde noviembre de 2019, ADT ha subcontratado en Puerto Rico los servicios de JL Security Electrical & A/C, Inc. (en adelante, "JL Security"), siendo el contrato de servicios más reciente el de 20 de noviembre de 2019.

8. JL Security provee servicios de instalación, mantenimiento, inspección y reparación de equipo de alarma y seguridad de residencia, pequeños negocios y comercial, a clientes de ADT a solicitud de ADT.

9. Como parte de la estrategia de negocio, tomando en consideración los costos e ingresos y para aumentar la competitividad y productividad del negocio, ADT determinó, a nivel de todo Estados Unidos, reducir costos y personal en varias localidades en donde opera, incluyendo Puerto Rico.

10. A principios del 2023, George Manginelli (en adelante, "Manginelli"), quien en aquel entonces se desempeñaba como Group General Manager para ADT a cargo de Florida y Puerto Rico, participó en varias llamadas con el "Senior Leadership Team" de ADT donde se discutió las operaciones de ADT y la necesidad de reducir costos para mejorar eficiencia.

11. Durante estas reuniones, Manginelli recibió instrucciones del "Senior Leadership Team" de ADT para reducir una cantidad específica de dólares en costos en las operaciones de Puerto Rico y Florida.

12. Manginelli implementó la reducción de costos reduciendo personal y reduciendo otros costos de operación de ADT en Puerto Rico y Florida.

13. Manginelli determinó que, para lograr la reducción en los costos, ADT tenía que eliminar cinco (5) puestos de trabajo en la operación de Puerto Rico.

14. Erika Torres, Gerente General de ADT en Puerto Rico (en adelante, "Torres"), y Manginelli, identificaron y seleccionaron a los empleados a ser despedidos en Puerto Rico a base de un análisis de productividad, calidad de trabajo, conocimiento del trabajo, enfoque al cliente, trabajo en equipo y las acciones correctivas de los empleados en sus expedientes de personal.

15. Como parte del proceso de selección para el despido de estos empleados, Torres preparó el documento titulado "Reduction in Force (RIF) Evaluation Form".

16. A las áreas de productividad, calidad del trabajo, conocimiento de las funciones, enfoque al cliente, y trabajo en equipo a ser evaluadas, Torres y Ángel Arroyo, "Team Manager High Volume Install and Service" de ADT en Puerto Rico en ese momento (en adelante, "Arroyo"), asignaron a cada empleado una puntuación de entre uno (1) y tres (3); siendo uno (1) la puntuación más baja indicando un pobre desempeño, y tres (3) la puntuación más alta indicando el mejor desempeño posible. En las áreas de productividad, calidad del trabajo, y enfoque al cliente, Torres y Arroyo asignaron la puntuación utilizando las métricas compiladas por ADT en estas áreas.

17. En las áreas de conocimiento de funciones y trabajo en equipo, Torres y Arroyo asignaron una puntuación a cada uno de los empleados entre uno (1) y tres (3) basado en su apreciación del conocimiento de funciones y trabajo en equipo de cada uno. Torres y Arroyo llegaron a un consenso de la puntuación asignada a cada empleado en estas áreas.[1]

18. Luego de asignar puntuaciones en cada área, Torres calculó un promedio de las puntuaciones asignadas e incluyó el resultado en el documento "Reduction in Force (RIF) Evaluation Form." Torres incluyó, además, una nota para resaltar a los empleados que tuvieran acciones correctivas por desempeño en sus respectivos expedientes de personal.

19. Torres y Manginelli evaluaron los resultados y seleccionaron para despido a los cuatro (4) empleados en las posiciones de instalación y servicio con las puntuaciones más bajas en sus respectivas clasificaciones ocupacionales quienes, además, eran los únicos cuatro (4) empleados en el área de instalación y servicio que tenían acciones correctivas por desempeño en sus respectivos expedientes. Además de esas cuatro (4) posiciones en el área de instalación y servicio, ADT eliminó, además, una posición gerencial en Puerto Rico.

20. En específico, la reducción de personal impactó varias clasificaciones ocupacionales en la operación de ADT en Puerto Rico, a saber: dos (2) empleados en la clasificación ocupacional de Residential Installer, un (1) empleado en la clasificación ocupacional de Residential Technician II Service, un (1) empleado en la clasificación ocupacional de Residential Technician III Service y un (1) empleado en la clasificación ocupacional de Team Manager High Volume Install and Service.

21. Torres y Manginelli seleccionaron a Matías Rivera para despido porque una puntuación de 2.2 de 3.0, una de las puntuaciones más bajas al comparar con sus compañeros, y tenía varias acciones disciplinarias y llamadas de atención por sus problemas de desempeño, incluyendo incumplir con las métricas establecidas.

22. La puntuación de Matías Rivera, 2.2 de 3.0, fue la más baja de todos los Técnicos III de Servicio. Además, fue una de las puntuaciones más bajas de todos los técnicos en todos los niveles y de los instaladores.

23. La puntuación obtenida por Alexis Maldonado (2.4/3.0), el otro Técnico de Servicio III empleado por ADT al momento de tomar la decisión de despedir al Querellante, significa que el desempeño de Maldonado era mejor que el del querellante.

24. Alexis Maldonado comenzó a trabajar con ADT antes que el querellante.

25. Como parte del proceso de selección de Matías Rivera para su despido, ADT consideró, además de la puntuación del Querellante, (i) las métricas sobre venta de equipo adicional, según comunicado el 27 de marzo de 2023; (ii) el "Performance Improvement Plan" del 15 de agosto de 2018, relacionado a no mejorar calidad del trabajo y estar por debajo de lo requerido en dicho renglón, además de evitar dejar problemas en los servicios y proveer más atención al confirmar problemas; (iii) el "Coaching for Improvement" de 16 de marzo de 2018, que ADT emitió al Querellante por mantener desempeño bajo a estándares de la compañía, reflejando deficiencias en inventario; y (iv) el "Performance Improvement Plan" de 23 de marzo de 2017, sobre no seguir instrucciones al incumplir con preparar los documentos relacionados al trabajo realizado; relacionado a no mejorar calidad del trabajo y estar por debajo de lo requerido en dicho renglón, además de evitar dejar problemas en los servicios y proveer más atención al confirmar problemas; entre otros.

26. Los empleados que se vieron afectados por la reducción de personal en Puerto Rico fueron seleccionados tomando en consideración a los empleados en la misma clasificación ocupacional.

27. Como parte de la reducción de personal, ADT despidió al querellante el 1 de mayo de 2023.

28. El 3 de mayo de 2023, ADT notificó a Matías Rivera varios documentos relacionados con su despido.

29. Durante su deposición, Matías Rivera indicó que su despido fue injustificado porque su "[t]rabajo había, trabajo hay todavía, siempre ha habido servicios en ADT".

30. Matías Rivera fue uno de ochenta y ocho (88) empleados despedidos por ADT como parte de la reducción de personal. Empleados de ADT en Puerto Rico y diecinueve (19) estados, incluyendo Florida, Texas, Nueva York, Indiana, Pennsylvania, Kansas, Colorado, Tennessee, California, Georgia, Massachusetts, North Carolina, Washington, Connecticut, Louisiana, Mississippi, Nueva Jersey, Nevada, y Maryland, en treinta y cuatro (34) clasificaciones ocupacionales que incluyen IT Analyst, IT Architect, IT Director, IT Engineer, IT Senior Manager, IT Manager, IT Project Manager, IT Specialist, IT Vice-President, Quality Management Representative, CS & Monitoring Supervisor, Telemanagement Analyst, IT Senior Technician, Executive Administrative Assistant, Administrative Coordinator, Supply Chain Coordinator, Senior Software Developer, Installer, High Volume Install and Service Team Manager, Administrative

Processor, Service Technician, Vintage Salary, Senior Customer Care Analytics Analyst, Employee Experience Unit Manager, Customer Care Enterprise Initiatives Manager, Retention Specialist, Care Administrator, NRD WKFCPLNG Administrator, NRD WKFCPLNG Analyst, Administrative Assistant Patrol, Care Team Manager, Product Engineer, Technical Project Manager, Senior Product Engineer, y Product Engineer, fueron despedidos como parte de la reducción de personal que afectó a Matías Rivera.

En desacuerdo, oportunamente el 18 de marzo de 2026, el apelante presentó ante este Tribunal un recurso de apelación. Mediante este, expuso los siguientes señalamientos de error:

Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción al permitir enmiendas a las alegaciones de la querella, contrario a derecho.

Erró el Honorable Tribunal de Primera Instancia al determinar los hechos 8 al 27 y 30 de la Sentencia, con prueba que no fue notificada durante el descubrimiento de prueba y sostenidas con declaraciones juradas.

Erró el Honorable Tribunal de Primera Instancia al atender la sentencia sumaria más favorable para la parte querellada.

El 26 de marzo de 2026, notificamos una *"Resolución"* mediante la cual le concedimos a la parte apelada un término de veinte (20) días para presentar su alegato en oposición.

En cumplimiento de ello, el 15 de abril de 2026, la parte apelada presentó el alegato requerido.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco legal aplicable al presente caso.

**II.**

**A**.     **Sentencia Sumaria**:

La sentencia sumaria es un mecanismo procesal cuya función es permitir a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico*, Inc., 2025 TSPR 1; *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769, 784 (2016).

Así pues, se dictará sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay u otra evidencia que obre en el expediente del tribunal, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente. 32 LPRA Ap. V, R. 36.3 (e); *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp.,* 2025 TSPR 6; *González Meléndez v. Municipio Autónomo de San Juan,* 212 DPR 601, 611-612 (2023). Así, el criterio rector al considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales pertinentes, según alegados por las partes en sus respectivas solicitudes u oposiciones, y que solo reste aplicar el Derecho. *Rodríguez García v. UCA,* 200 DPR 929, 941 (2018). Esta determinación debe ser guiada por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria, para evitar la privación del derecho de todo litigante a su día en corte. *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Al examinar la procedencia de una solicitud de sentencia sumaria, los tribunales deben guiarse por las disposiciones de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1-36.7. Al efectuar el referido examen, el Tribunal de Apelaciones, deberá realizar una revisión *de novo* y examinar el expediente de la manera más favorable a la parte que se opuso a la moción de sentencia sumaria en el foro primario, haciendo todas las inferencias permisibles a su favor. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico,* 212 DPR 335, 353 (2023)*; Meléndez González et al v. M Cuebas*, 193 DPR 100, 118 (2015).

Nuestra evaluación está limitada a la consideración de la evidencia que las partes presentaron ante el foro de primera instancia. Debemos revisar que los escritos cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Además, verificamos si en realidad existen hechos materiales en controversia. Finalmente, de encontrar que los hechos materiales realmente están incontrovertidos,

revisamos si la primera instancia judicial aplicó correctamente el derecho a la controversia. *Conklin y otros v. Passalacqua y otros*, 2026 TSPR 18; *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119.

Si de los documentos surge duda sobre la existencia de una controversia de hechos, éstas se deben resolver contra el promovente, ya que este mecanismo procesal no permite que el Tribunal dirima cuestiones de credibilidad. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020). De igual modo, como regla general, no es aconsejable disponer de los casos por la vía sumaria cuando exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. *Jiménez Soto v. Carolina Catering Corp.*, 2025 TSPR 3. Este foro intermedio tampoco puede adjudicar los hechos materiales y esenciales en disputa, ya que esa tarea le corresponde al foro de primera instancia. *Vera v. Dr. Bravo*, 161 DPR 307, 335 (2004).

**B.      Procedimiento Sumario de Reclamaciones Laborales:**

La Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 del 17 de octubre de 1961, 32 LPRA sec. 3118, *et seq.,* dispone un mecanismo de reclamaciones laborales para la consideración y adjudicación de las querellas de obreros y empleados contra sus patronos relacionadas a salarios, beneficios y derechos laborales de manera expedita. 32 LPRA sec. 3118; *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 928 (2008).

Esta legislación se creó con el fin de establecer un mecanismo procesal judicial capaz de lograr la rápida consideración y adjudicación de las querellas contra los patronos. *Slim v. Royal Blue Hospitality, LLC H/N/C El Conquistador Resort-Puerto Rico*, 2025 TSPR 133. Este tipo de reclamación tiene que tramitarse con celeridad para adelantar la política pública de proteger al obrero y desalentar el despido injustificado. *Id.* Sobre la naturaleza no ordinaria de los pleitos instados al palio de la precitada Ley, nuestro mas Alto Foro ha reiterado las siguientes expresiones:

> [T]anto los tribunales como las partes deben respetar: (1) los términos relativamente cortos dispuestos en el estatuto para contestar la querella; (2) los criterios estrictos para conceder una prórroga para contestar la querella; (3) el mecanismo especial que flexibiliza el emplazamiento del patrono, y (4) entre otras particularidades provistas por la ley, las limitaciones en el uso de los mecanismos de descubrimiento de prueba. De no hacerlo, el procedimiento se convertiría en ordinario, lo cual sería incompatible tanto con el mandato legislativo de diligencia en el dictamen judicial, como con su carácter reparador. (Citas omitidas). *Collazo Muñiz v. New Fashion World Corporation h/n/c Aliss y otros*, 2025 TSPR 22.

El procedimiento sumario bajo la Ley Núm. 2, *supra*, "no es, ni puede ser, una carta en blanco para la concesión de remedios a obreros que no han justificado adecuadamente, mediante alegaciones o prueba, hechos que avalen su derecho a lo reclamado." (citas omitidas). *Marín v. Fastening Systems, Inc.*, 142 DPR 499, 512-513 (1997); *Rivera v. Insular Wire Products*, 140 DPR 912, 928 (1996). Asimismo, los daños generales reclamados, al no constiuir una suma líquida, deben ser objeto de prueba mediante la celebración de las vistas que sean necesarias. *Id.*; *Vizcarrondo Morales v. MVM, Inc.*, supra, pág. 937; *Ruiz v. Col. San Agustín*, 152 DPR 226, 236 (2000).

**C.      Ley sobre Despido Injustificado (Ley Núm. 80):**

La Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como la *Ley Sobre Despidos Injustificados* (Ley Núm. 80), protege al empleado de actuaciones arbitrarias del patrono y busca desalentar despidos sin justa causa mediante el pago de una indemnización. *Méndez Ruiz v. Tecno Plastics Industries, Inc.,* 2025 TSPR 68. La mesada que provee esta ley busca compensar al empleado por el daño sufrido a consecuencia del despido sin causa justificada. *Vélez Cortés v. Baxter*, 179 DPR 455, 465 (2010). La *Exposición de Motivos* de la Ley Núm. 80, s*upra*, establece que el propósito del citado estatuto es proteger:

> de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo mediante la aprobación de una ley que, a la vez otorgue unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado desaliente la incidencia de este tipo de despido. *Exposición de Motivos,* Ley Núm. 80, 29 LPRA sec. 185a, *et seq.* Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 424 (2013).

La Ley Núm. 80 aplica a aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remuneración, y (3) sean despedidos de su cargo, sin que haya mediado una justa causa. *Orsini García v. Srio. de Hacienda*, 177 DPR 596, 620-621 (2009).

Debido a su carácter reparador, las disposiciones de la Ley Núm. 80 deben ser interpretadas liberalmente a favor del trabajador. *SLG Zapata-Rivera v. J.F. Montalvo*, pág. 428. El Tribunal Supremo ha opinado en reiteradas ocasiones que, bajo las disposiciones de la referida Ley Núm. 80 constituye justa causa para el despido aquella que tiene su origen, no ya en el libre arbitrio del patrono, sino aquella vinculada a la ordenada marcha y funcionamiento de la empresa en cuestión. *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 376-377 (2001). Toda vez que nuestro ordenamiento jurídico no prohíbe absolutamente el despido de un empleado o empleada. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 905 (2011).

El Artículo 2 de la Ley Núm. 80, detalla las circunstancias que constituyen "justa causa". *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR, a la pág. 424. Dichas circunstancias incluyen motivos fundamentados en la conducta del empleado, así como razones de índole empresarial. *Id.* A esos efectos, dicho Artículo 2 establece que "[s]e entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono". 29 LPRA sec. 185b.

El referido Artículo 2 establece que las siguientes razones constituyen justa causa para el despido de un empleado:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de **reorganización,** así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. 29 LPRA §185b. (Énfasis suplido).

Al interpretar el inciso (e) el Tribunal Supremo puntualizó que, si bien es cierto que el patrono puede despedir empleados o empleadas como parte de una reorganización empresarial que así lo requiera, para que esos despidos se consideren justificados tienen que responder a una reorganización *bona fide*. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 426. De forma similar, al interpretar inciso (f) el Tribunal estableció que "esta disposición no pretende que toda merma en ventas o ganancias se traduzca en justa causa para un despido. Por el contrario, esta aplicará únicamente a aquellas situaciones en las cuales la aludida disminución sea una sustancial al punto que atente contra la continuidad de la empresa". *Id.* En términos generales, el Tribunal razonó que "para poder justificar el despido al amparo de cualquiera de estas modalidades el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad, o de la alegada disminución en la producción, ventas o ganancias, según corresponda". *Id,* pág. 427.

Ahora bien, "la obligación que impone la Ley Núm. 80, *supra*, de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o plan de reestructuración de una forma particular o específica". *Segarra Rivera v. Int´l. Shipping et al.*, 208 DPR 964, 1002 (2022). En cambio, "basta con que el patrono demuestre que **la acción respondió a una decisión gerencial válida a la luz de**

**las circunstancias y que no obedeció a un mero capricho o arbitrariedad, y así, tendrá que acreditarlo".** (Énfasis suplido). *Id,* pág. 1002-1003.

Por otro lado, el Tribunal Supremo razonó que no existe disposición en la Ley Núm. 80, *supra*, que vincule "la presencia de una circunstancia junto a la otra." Con relación a lo anterior el Supremo expresó que:

> [N]o se requiere necesariamente experimentar una reducción en el volumen de producción, ventas o ganancias de la empresa en su conjunto para que se justifique la reorganización. De este modo, un patrono podrá tomar la decisión de reorganizarse por cualquier motivo, siempre y cuando ello constituya una decisión empresarial válida, de utilidad y no un mero capricho. Es decir, siempre que surjan condiciones en la operación del negocio que así lo justifiquen. *Segarra Rivera v. Int´l. Shipping et al.,* supra, pág. 1003.

En una acción por despido injustificado incoada por un empleado, es el patrono el que tiene el peso de la prueba para establecer que el despido fue justificado. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 428. "Para ello tiene que probar, mediante preponderancia de la evidencia, los hechos constitutivos de alguno de los fundamentos eximentes de responsabilidad según consignados en el Art. 2 de la Ley [Núm.] 80, *supra*". *Id*, pág. 429. También, debe probar un nexo causal entre las razones aducidas, conforme al mencionado Art. 2, y el despido en controversia. *Id.*

**III.**

En esencia, el apelante plantea que incidió el foro primario al resolver sumariamente el presente caso a favor de la parte apelada. Entiende, que su despido es el resultado de una determinación caprichosa y no justificada de la referida parte. Asimismo, argumenta que la parte apelada no logró fundamentar fáctica ni jurídicamente la procedencia de su despido. Particularmente, sostiene que la "*Moción de Sentencia Sumaria"* está sustentada en declaraciones juradas; prueba documental que no fue notificada durante el descubrimiento de prueba; y en hechos que no fueron alegados en la *"Contestación a la Querella."* De otra parte, aludió a la arbitrariedad del despido. Indicó, que fue

cesanteado a pesar de que existía un alto volumen de trabajo y de que la parte apelada retenía empleados subcontratados desde el año 2019, los cuales realizaban su mismo trabajo y llevaban menos tiempo que él en la empresa.

Por otro lado, la parte apelada sostiene que sí levantó como defensa afirmativa en la alegación responsiva que despidió al apelante debido a una reducción de personal por razones de negocio. A su vez, arguye que el apelante no logró controvertir los hechos propuestos en la "*Moción de Sentencia Sumaria.*" En cuanto a los méritos del despido, argumenta, que la destitución del apelante fue válida dado que se ejecutó para reorganizar sus operaciones y se llevó a cabo mediante un análisis de personal basado en productividad; calidad; conocimiento; servicio al cliente; trabajo en equipo; y la existencia de acciones correctivas.

Tras una revisión de *novo* del expediente ante nuestra consideración, determinamos que no existen hechos materiales en controversia que impidan la adjudicación sumaria del presente caso. No existe controversia sobre el hecho de que el apelante fue empleado de la parte apelada hasta el 1 de mayo de 2023, fecha en que fue despedido. Asimismo, la parte apelada presentó prueba documental intitulada "Reduction in Force (RIF) Evaluation Form."[3] De este documento surge, que el apelante fue evaluado, junto a otros empleados, en las siguientes áreas: productivity; Quality of work; Job Knowledge; Customer Focus; y Teamwork. El apelante obtuvo una puntuación promedio de 2.2 dentro de una escala de 3.0.

De igual modo, la parte apelada presentó varias tablas de las que surgen el cargo, lugar y edad de los empleados despedidos a nivel estatal y local.[4] El apelante no refutó el contenido de estos documentos más allá de plantear la insuficiencia de la prueba presentada y que los hechos aducidos no fueron levantados oportunamente en la *"Contestación a la*

---

[3] Véase, Entrada Núm. 44 de SUMAC del TPI, "Exhibit C – Reduction in Force Evaluation."

[4] Véase, Entrada Núm. 44 de SUMAC del TPI, "Exhibit L – OWBPA Disclosure."

*Querella."* Es preciso señalar, que la parte apelada en su alegación responsiva levantó como defensa que se "vio obligado a reducir su personal [por] razones de negocio, incluyendo entre estas la reducción del volumen de negocios." A su vez, cabe mencionar que el apelante se limitó a acompañar su *"Moción en Oposición a Solicitud de Sentencia Sumaria"* con una declaración jurada; dos planillas de contribución sobre ingresos; la *"Contestación a Querella;"* y una captura de pantalla con información de la empresa.

Nótese, que al amparo de la Regla 36 de Procedimiento Civil, *supra*, una solicitud de sentencia sumaria puede ser presentada antes o después de haber concluido el descubrimiento de prueba. Ante ello, no existe un deber de producir o notificar en el descubrimiento de prueba la documentación con la que se va a acompañar la referida solicitud.

Ante todo lo anterior, solo resta aplicar el derecho a los hechos esenciales y pertinentes no controvertidos.

Cabe destacar, que la Ley Núm. 80, *supra*, no prohíbe que un patrono pueda despedir a sus empleados. Empero, establece un proceso justo para evitar que las personas sean desprovistas de sus puestos por razones arbitrarias y caprichosas. De modo que, un patrono puede despedir a un empleado por razones que sean acordes a la ordenada marcha y funcionamiento de su empresa. En este caso, la parte apelada alegó que despidió al apelante debido a una reducción de personal y costos. De conformidad a lo expuesto, el Artículo 2 de la Ley Núm. 80, *supra*, contempla una lista no taxativa de las causas justificadas que tiene a su favor un patrono para despedir a sus empleados. Entre ellas se encuentra la reorganización de la empresa. Nuestro más Alto Foro ha reconocido lo siguiente al respecto:

> Un patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración *bona fide.* SLG Zapata-Rivera v. J.F. Montalvo, supra, pág. 426.

De manera que, la cuestión de umbral es que el despido de un empleado se realice por razones justificadas relativas al buen y normal funcionamiento de la empresa y a tenor de una decisión valida en consideración de las circunstancias. En los hechos ante nuestra consideración, la ejecutoria laboral del apelante fue evaluada a los fines de tomar una decisión de cesantía o permanencia en el empleo. Asimismo, la parte apelada tomó una decisión de reorganizar su negocio a nivel de los Estados Unidos y de Puerto Rico mediante la cual despidió una serie de empleados. De las circunstancias antes expuestas no surge que la parte apelada haya despedido al apelante por mero capricho o arbitrariedad. Por lo cual, a la luz de nuestra normativa legal vigente, el despido del apelante fue justificado y los errores señalados no fueron cometidos.

Es preciso mencionar lo siguiente: "No es función de los tribunales administrar los negocios ni aconsejar a los directores de estos sobre cómo manejar los asuntos de su empresa, siempre y cuando estas decisiones no estén motivadas por razones discriminatorias ni que mucho menos sean producto del mero capricho del patrono." *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 1002.

**IV.**

Por los fundamentos expuestos, confirmamos la *"Sentencia"* recurrida.

**Notifíquese.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones