Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| NÉLIDA HERNÁNDEZ FELICIANO, JESÚS CORTÉS MORALES y la Sociedad de Bienes Gananciales Compuesta por estos<br><br>APELADA<br><br>V.<br><br>AWILDA HERNÁNDEZ ROMÁN, JOSÉ FIGUEROA, COMPAÑÍA ASEGURADORA ABC<br><br>APELANTE | TA2026AP00173 | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Aguadilla<br><br>Caso Núm. SS2024CV00225<br><br>Sobre: Incumplimiento de Contrato; Daños y Perjuicios<br><br>Interferencia Tortícera con Relación Contractual |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez

*Grana Martínez, Jueza Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 29 de abril de 2026.

La apelante, señora Awilda Hernández Román solicita que revoquemos la Sentencia Parcial en la que el Tribunal de Primera Instancia resolvió que incumplió sus obligaciones contractuales.[1]

El apelado, señor Jesús Cortés Morales presentó su oposición al recurso.

I

### Hechos procesales[2]

El apelado y la señora Nélida Hernández Feliciano y la sociedad legal de gananciales compuesta por ambos presentaron una demanda contra la apelante y el señor José Figueroa y Firtsbank por incumplimiento de contrato, interferencia tortícera con la relación contractual y daños y perjuicios. Su representación legal sostuvo que la

---

[1] Véase Entrada Número 148, Sistema Unificado de Administración y Manejo de Casos (SUMAC) ante el Tribunal de Primera Instancia (TPI).
[2] Detallamos únicamente los hechos esenciales para comprender la determinación que hoy tomamos.

apelante incumplió con el contrato de compraventa en el que se obligó a venderle la propiedad en controversia al apelado y a permitirle realizar las mejoras necesarias para el financiamiento. La parte apelada argumentó que la apelante le impidió realizar dichas mejoras antes del vencimiento del término del contrato.[3]

Posteriormente, el apelado solicitó al TPI que dictara sentencia sumaria a su favor.[4] Su representación legal redujo las controversias a determinar si:

1. la apelante incumplió con los términos del contrato y si estaba obligada a vender la propiedad por el precio pactado.
2. la apelada ejerció el derecho de opción a compra dentro del término establecido en el contrato de compraventa.

El apelado solicitó sentencia sumaria a su favor alegando que no existía controversia sobre los hechos siguientes. El 3 de octubre de 2023 ambas partes, firmaron un contrato de opción a compra sobre la propiedad en controversia. Las partes acordaron que la apelada realizaría y asumiría el costo de las mejoras, en caso de que fueran necesarias. Posteriormente, suscribieron una enmienda para corregir la dirección de la propiedad y extender el plazo para ejercer la opción hasta el 15 de marzo de 2024. El tasador requirió que se instalara la verja del lado derecho, culminaran las áreas de utilidad y se pintaran las paredes del interior del almacén. Según la tasación, las reparaciones tenían un costo de $2,100.00, El apelado fue advertido de que no podían realizar las reparaciones hasta que se verificara su crédito y que éstas eran necesarias para la aprobación final del Programa de Vivienda. El 21 de febrero de 2024, FirstBank confirmó la aprobación del préstamo y notificó al apelado que el cierre se coordinaría tan pronto completara las reparaciones y Vivienda expidiera la carta. El apelado ejerció el derecho

---

[3] SUMAC, Entrada número 1 ante el TPI.
[4] SUMAC, Entrada número 83 ante el TPI.

de opción en el término acordado. No obstante, la apelante le impidió entrar a la propiedad a realizar las mejoras y no pudo hacer el cierre hipotecario en el término que le concedió el banco.

Por su parte, la apelante alegó que suscribió con el apelado un contrato de opción a compra y negó las alegaciones de incumplimiento de contrato en su contra. Posteriormente, presentó una moción de sentencia sumaria en la que solicitó la desestimación de la reclamación de la señora Nélida Hernández Feliciano, porque no fue parte del contrato.[5] Además, solicitó la desestimación de la totalidad de la demanda porque no requirió al apelado que realizara mejoras, y debido a que no eran necesarias para vender la propiedad. La apelante argumentó que el apelado nunca le informó de la tasación, ni de las mejoras que debía realizar. Su representación legal alegó que el apelado reconoció que los trabajos eran por miles de dólares y que no podía completarlos antes del vencimiento del contrato de opción. Por último, negó que se opuso a la venta y alegó que solo pretendía aclarar que ocurriría con las mejoras, si no eran terminadas antes del vencimiento del contrato de opción.

El foro primario desestimó la reclamación de la señora Nélida Hernández Feliciano, porque no fue parte del contrato de opción a compra y debido a que no tenía una sociedad de gananciales con el apelado. No obstante, dictó Sentencia Sumaria Parcial a favor del apelado, porque probó el incumplimiento de contrato de la apelante. El foro apelado quedó convencido de los hechos siguientes. El 3 de octubre de 2023, ambas partes firmaron un Contrato de Opción de Compraventa. El apelado adquirió el derecho de opción de la propiedad en controversia por el precio de ciento cuarentaisiete mil dólares ($147,000.00). El contrato tenía una vigencia de noventa días. Las partes enmendaron el contrato para corregir la dirección de la propiedad y extender el derecho de opción hasta el 15 de marzo de 2024. El apelado como comprador

---

[5] SUMAC, Entrada número 83 ante el TPI.

asumió la responsabilidad por las reparaciones requeridas. El 25 de octubre se realizó la tasación de la propiedad. El tasador solicitó ciertas reparaciones como la instalación de la verja del lado derecho, culminar las áreas de utilidad y pintar las paredes del interior del almacén. Su estimado por el costo de las mejoras fue de dos mil cien dólares ($2,100.00). No existe controversia sobre el contenido de la tasación, pero el apelado argumentó que los costos estimados no eran reales.[6]

La sentencia sumaria por incumplimiento de contrato contra la apelante, además, está fundamentada en los hechos siguientes. El 27 de octubre de 2023 se discutieron las reparaciones con el apelado. Sin embargo, fue advertido que no podía realizarlas hasta que el comité de crédito verificara el caso. Las reparaciones eran necesarias para la aprobación final del Programa de Vivienda. La agencia realiza una inspección final y autoriza la aprobación, una vez completadas las mejoras. El 5 de febrero de 2024 el banco aprobó el financiamiento por ciento cinco mil dólares ($105,000.00) sujeto al cumplimiento de condiciones posteriores. El 12 de febrero de 2024, el apelado comenzó a hacer las mejoras. El 21 de febrero el banco confirmó la aprobación del préstamo hipotecario. Además, informó al apelado que el cierre iba a coordinarse tan pronto completara las reparaciones y el Departamento de Vivienda expidiera la carta. La apelante no permitió que el apelado comenzara las reparaciones necesarias hasta que no obtuviera la póliza de la Corporación del Fondo del Seguro del Estado. Durante el mes de febrero de 2024, la apelante prohibió al apelado entrar a la propiedad para continuar con las reparaciones. El 22 de febrero de 2024 el apelado advirtió a la apelante de su incumplimiento con los términos del contrato, y le dio oportunidad para rescindirlo a cambio del resarcimiento de los daños.[7]

---

[6] SUMAC, Entrada número 83, determinaciones de hechos 3, 6 y 8.
[7] SUMAC, Entrada número 83, determinaciones de hechos 9 a 10, 12 a 17.

Por otro lado, el TPI declaró no ha lugar la sentencia sumaria en la que la apelante solicitó la desestimación de la totalidad de la demanda. El TPI determinó los hechos a continuación en lo que respecta a la moción de sentencia sumaria de la apelante. El apelado no estaba de acuerdo con el estimado de la tasación. Durante la deposición dijo que no sabía cuál sería el costo de las mejoras y admitió que podía ser más de lo tasado. El apelado no es perito. Por esa razón, de su testimonio no puede concluirse que existe una diferencia real entre el precio de tasación y el costo de las mejoras. El apelado indicó que no fue hasta el 5 de febrero de 2024 que el banco le notificó la aprobación del préstamo y que podía iniciar los trabajos. El 5 de febrero el banco notificó una Evaluación Preliminar favorable al apelado, y que la aprobación final estaba condicionada a la concesión de los fondos CDBG del Departamento de Vivienda. El banco iba a realizar una evaluación final y solicitaría cualquier otra información requerida. La evaluación preliminar tenía una vigencia de treinta días y estaba sujeta a que todos los documentos requeridos continuaran vigentes. El 12 de febrero, el apelado comenzó a realizar las reparaciones, debido al tiempo que le tomó a la apelante obtener la póliza de la CFSE. El apelado reconoció que las reparaciones excederían por mucho el estimado del tasador y que era imposible terminarlas entre el 5 de febrero de 2024 y la fecha de vencimiento del contrato de opción. La apelante preparó un documento privado, luego de autorizar las mejoras. Su intención fue aclarar qué pasaría con los trabajos, si el cierre no se finalizaba dentro del término establecido. El apelado se negó a firmarlo. El 22 de febrero de 2024 el apelado envió a la apelante una comunicación en la que alegó incumplimiento de contrato, que era un edificante de buena fe y que tenía que rembolsarle cincuenta mil dólares, ($50,000. 00) por los daños

a pesar de que no fue pactado. El apelado reconoció que tenía hasta el 15 de marzo de 2024 para comprar la propiedad.[8]

El foro primario restó credibilidad a que el apelado comenzó los trabajos, sin la aceptación de la opción y sin un acuerdo previo, debido a que (1) la apelante no alegó que el apelado entró ilegalmente a la propiedad o sin su autorización, (2) los materiales y los obreros que iban a realizar los trabajos estaban presentes, (3) el apelado llevaba varios días realizando las mejoras, cuando surgió la discusión que provocó su expulsión y (4 ) la propia apelada adquirió la póliza del FSE para que pudiera comenzar las mejoras. Dicho foro concluyó que entre las partes existía un acuerdo. No obstante, la apelante tenía la intención de modificarlo unilateralmente, porque autorizó las mejoras sin percatarse que no incluyó las garantías que quería. Según el TPI la apelante pretendía ir contra sus propios actos, porque ya había autorizado al apelado a realizar las mejoras.

El TPI no dio crédito al temor de la apelante a que las mejoras no se terminarían a tiempo, ni a su cuestionamiento sobre los costos reales. El foro primario no acogió sus excusas, porque la apelante sabía o debió saber ambas situaciones, antes de que el apelado comenzara a realizar las mejoras. El TPI resolvió que la preocupación de la apelante era tardía, porque entre las partes ya existía un acuerdo. Para el TPI, la apelante pudo manifestar sus preocupaciones antes de que el apelado comenzara los trabajos y de llegar a un acuerdo. Además, resolvió que la apelante no evidenció que el apelado no podía cumplir con los términos para obtener el financiamiento, ni si incumplía con sus obligaciones contractuales. Concluyó que la apelante incumplió sus obligaciones contractuales, cuando detuvo las mejoras, porque el apelado se negó a modificar la obligación. Según el TPI el incumplimiento de la apelante imposibilitó

---

[8] SUMAC, Entrada número 148 ante el TPI, determinaciones de hechos 6-13, relacionadas a la solicitud de sentencia sumaria de la apelante.

que el apelado realizara las mejoras, obtuviera el financiamiento y ocasionó que perdiera la oportunidad de concretar el negocio. Por último, resolvió que la compraventa estaba sujeta a condiciones que no se podían cumplir, porque estaba atada a un término fijo que había vencido.

El foro apelado (1) desestimó sumariamente la reclamación de Nélida Hernández Feliciano (2) declaró no ha lugar la solicitud de sentencia sumaria de la apelante y (3) dictó sentencia sumaria parcial a favor del apelado por el incumplimiento de contrato de la apelante. Consecuentemente, ordenó a la apelante a resarcir al apelado, por los daños y pérdidas provocados por su incumplimiento y por el pago de las mejoras que realizó en la propiedad. Además, ordenó la continuación de los procedimientos relacionados a la causa de daños y el resarcimiento por pérdidas económicas y costo de mejoras.

La apelante presentó una moción de reconsideración y determinaciones de hechos adicionales. Su representación legal alegó que el TPI se equivocó al exonerar de temeridad a la demandante Nélida Hernández Feliciano. Según la apelante, la demandante fue temeraria porque rechazó su oferta de desistir la reclamación, a pesar de que reconoció que no fue parte del contrato de opción a compra.

Por otro lado, la apelante argumentó que el TPI concluyó erróneamente que incumplió sus obligaciones contractuales. La apelante alegó que (1) la cláusula sobre las mejoras incluidas en el contrato de opción a compra se limita a las requeridas por la institución financiera para el financiamiento, (2) las mejoras no fueron requeridas por la institución financiera, sino por el Departamento de Vivienda, (3) durante el descubrimiento de prueba quedó demostrado que el apelado comenzó a hacer los trabajos el 12 de febrero de 2024, (4) **el apelado estaba haciendo trabajos mayores a los desglosados en la tasación que eran extensos y costosos y no podían culminarse dentro del término de la**

**opción,** (5) no fue hasta vencido el término de la opción que el 18 de marzo de 2024, que el apelado informó que ejercería ese derecho. Según la apelante el TPI, en la alternativa, debió determinar la existencia de los hechos esenciales que alegó en la moción de sentencia sumaria.

La apelante cuestionó en la solicitud de reconsideración, que el TPI no determinó probado el hecho propuesto núm. 15 en la moción de sentencia sumaria que es el siguiente:

Como resultado de la Deposición tomada y previo a la presentación de la presente Solicitud, la parte demandada le solicitó a la parte demandante que desistiera de la reclamación de la demandante Nélida Hernández por claramente no ser cierto y no proceder en derecho.

Dicha parte presentó un correo electrónico el 16 de abril de 2025, como evidencia de que solicitó el desistimiento de la demandante.[9]

Por último, la apelante alegó que el TPI debió hacer las determinaciones adicionales de los hechos siguientes.

a. La primera vez que el demandante le informa y explica a la parte demandada sobre los trabajos de reparación que tiene que realizar fue el 5 de febrero de 2024.

b. La evaluación favorable de FirstBank emitida el 5 de febrero de 2024 tenía una vigencia de treinta (30) días, o sea, hasta el 5 de marzo de 2024.

c. El 18 de marzo de 2024 el demandante le notificó a la Demandada una comunicación donde informaba su intención de ejercer su derecho a Opción a Compra sobre la propiedad conforme el **Artículo 1029 del Código Civil de Puerto Rico.**

d. La parte demandada le notificó una comunicación a la parte demandante expresándole que no había ejercido su Oposición dentro del término establecido y que no procedía la venta de la propiedad, pero que estaba en la disposición de reembolsarle al Demandante cualquier gasto que haya incurrido en ese momento.

El foro primario no acogió los fundamentos presentados por la apelante en reconsideración. Dicho foro se negó a declarar temeraria a la señora Feliciano a pesar de que desestimó su causa de acción. El TPI concluyó que la solicitud de temeridad era contraria a derecho, porque estaba fundamentada en el mero hecho de la apelante haber prevalecido.

---

[9] SUMAC, Entrada número 85 ante el TPI, anejo 3.

Además, quedó convencido de que la demandante pudo creer de buena fe que era parte del negocio jurídico en controversia.

El foro apelado tampoco dejó sin efecto la determinación de incumplimiento de contrato contra la apelante. Al foro primario no le pareció importante si fue el Departamento de Vivienda o el banco quien requirió las mejoras. Según el TPI lo relevante era que las mejoras debían realizarse para obtener el financiamiento de un tercero. El TPI encontró contradictorio que la apelante alegara que la controversia no versaba sobre quien pagaba las mejoras, cuando el borrador del contrato que preparó giraba en torno a ese asunto. El foro primario no encontró evidencia para sostener que el apelado **estaba realizando mejoras distintas a las que solicitaron las instituciones financieras y a lo pactado.** Según el TPI la apelante utilizó como excusa la opinión del apelado sobre el costo de las mejoras, para dejar sin efecto la totalidad de lo pactado. Así el foro primario determinó que el contrato propuesto por la apelante evidenció su intención de que el apelado solicitara autorización para completar unos trabajos que había comenzado. Además, de su intención de que no tuviera una causa de acción por el costo de las mejoras, si la venta no se completaba. Según el TPI el momento para la apelante solicitar esa garantía no era después de que las mejoras comenzaron. Concluyó que no existía un ápice de evidencia para establecer que el apelado incumplió en cuanto a la construcción de las mejoras.

Por otro lado, el TPI rechazó los argumentos de que los trabajos no podían completarse a tiempo, porque fue la apelante quien los interrumpió, previo a la expiración del plazo contractual. El foro primario no dio credibilidad a la apelante, por su insistencia en que nunca aceptó el contrato de opción a compra. Según el TPI, la apelante pretendía que creyera que ambas partes acordaron el comienzo de las mejoras y que el

apelado realizó la inversión de materiales y comenzó los trabajos, sin la expectativa de consumar la venta.

El foro apelado declaró NO HA LUGAR la solicitud de determinaciones de hechos adicionales, porque no existía controversia del incumplimiento contractual de la apelante. Según el TPI, su incumplimiento se demostró porque no existía controversia de que (1) autorizó las mejoras necesarias para completar el financiamiento, (2) detuvo el proceso unilateralmente varios días después y solicitó modificación a lo pactado, (3) como no logró la modificación detuvo unilateralmente los trabajos dentro del término que el apelado tenía para terminarlos e impidió que pudiera completarlos.

Inconforme la apelante, presentó este recurso en el que alega que:

1. Erró el Honorable Tribunal de Primera Instancia al declarar Con Lugar la Moción de sentencia sumaria de la parte apelada y por ende Con Lugar la Demanda por Incumplimiento de Contrato, cuando existen controversias de Derecho y de Hechos sustanciales, que ameritan ser dilucidadas en sus méritos.

2. Erró el Honorable Tribunal de Primera Instancia en la alternativa declarara No Ha Lugar la Moción de Sentencia Sumaria de la parte apelante por existir hechos sustanciales no controvertidos que la sostenían.

3. Erró el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar la Solicitud de la parte demandada apelante de enmendar y/o añadir hechos adicionales, cuando los mismos surgen de la prueba presentada, y de los hechos incontrovertidos contenidos en las Mociones de Sentencia Sumaria y el récord.

4. Erró el Honorable Tribunal de Primera Instancia al no imponerle a la demandante Nélida Hernández Feliciano el pago de costas, gastos y honorarios de abogado por temeridad, al desestimarle la Demanda.

II

**Derecho**

**Moción de Sentencia Sumaria**

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria

posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. *Conklin v. Passalacqua 2026 TSPR 018, Soto y otros v. Sky Caterers,* 2025 TSPR 3; 215 DPR ___ (2025). No obstante, para que proceda es necesario que, de los documentos no controvertidos surja qué, no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V permite que cualquier parte en un litigio, solicite que el tribunal dicte sentencia sumaria a su favor sobre la totalidad del pleito o sobre cualquier reclamación solicitada. No obstante, la sentencia sumaria solo procederá cuando surge que el promovido no prevalecerá bajo ningún supuesto de hechos. *Conklin v. Passalacqua,* supra. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *BPPR v. Cable Media,* 2025 TSPR 1, 2015 DPR ___ (2025); *BPPR v. Zorrilla y otros,* 214 DPR 329, 338 (2024); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024), *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La Regla 36 de Procedimiento Civil, supra, exige el cumplimiento de ciertos requisitos. La parte contra quien se haya formulado una reclamación podrá presentar una moción de sentencia sumaria, no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, según lo dispuesto en la Regla 36.2. Además, la Regla 36 contiene los requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla

36.3, *supra*. La sentencia sumaria no puede dictarse cuando, (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Consejo Tit. v. Rocca Dev. Corp. et als.,* 2025 TSPR 6, 215 DPR __ (2025); *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

El Tribunal Supremo de Puerto Rico ha resuelto que el uso de la sentencia sumaria no es aconsejable en casos complejos en los que existe controversia sobre elementos subjetivos, de intención, propósitos mentales, negligencia o credibilidad. No obstante, eso no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención, como en los casos de discrimen, cuando de los documentos a ser considerados surge que no existe controversia de hechos materiales. *Soto y otros v. Sky Caterers,* supra.

La sentencia sumaria no procederá cuando (1) existan hechos materiales controvertidos, (2) existen alegaciones afirmativas en la demanda que no han sido refutadas, (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial o (4) no proceda en derecho. *Conklin v. Passalacqua,* supra.

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia, al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra,* y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36, *supra., Conklin v. Passalacqua,* supra. El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco

podrá adjudicar los hechos materiales en controversia, porque esa es una tarea del Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de un juicio de novo. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria, y hacer todas las inferencias permisibles a su favor. *Consejo Tit. v. Rocca Dev. Corp. et als.,* supra; *Soto y otros v. Sky Caterers, supra; BPPR v. Cables Media,* supra; *Cruz, López v. Casa Bella y otros,* supra; pág. 924, *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

Al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de novo, si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

### Teoría general de los contratos

Los contratos constituyen una fuente de las obligaciones en nuestro ordenamiento jurídico. *Conklin v. Passalacqua,* supra. El contrato es un negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento conforme a la ley, con la intención de crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751. Las partes pueden acordar cualquier cláusula que no sea contraria a la ley, la moral y el orden público. 31 LPRA sec. 9753. Los acuerdos contractuales tienen fuerza de ley entre las partes, sus sucesores y ante terceros conforme a la ley. 31 LPRA sec. 9754. Los contratos se perfeccionan desde que las partes manifiestan su consentimiento sobre el objeto y la causa, a excepción de aquellos que requieran una

formalidad solemne o se pacte una condición suspensiva. 31 LPRA sec. 9771.

Las normas que rigen las relaciones contractuales convergen con el principio de la buena fe contractual, latente en todo nuestro ordenamiento jurídico. La interpretación de los contratos presupone la lealtad, corrección y buena fe en su redacción. Su interpretación debe perseguir resultados acordes con la relación contractual y con las normas éticas. Los tribunales no deben relevar a una parte de cumplir con lo que se obligó contractualmente en un contrato legal, valido y sin vicio alguno. *Conklin v. Passalacqua,* supra.

### Contrato de opción a compra

El Código Civil de 1930 no regulaba el contrato de opción a compra. Durante su vigencia, el Tribunal Supremo de Puerto Rico lo definió como el convenio mediante el cual el concedente, promitente u optatario concede al optante la facultad exclusiva de decidir la celebración de un contrato principal. por tiempo fijo y en determinadas condiciones. La opción está atada a un contrato definitivo delimitado por las partes previamente. El derecho de opción no solo concede al optante la facultad de perfeccionar el contrato definitivo mediante la aceptación de la opción. Además, impone al concedente la obligación de no frustrar el derecho el que goza el optante. *PDCM Assoc. v. Najul Bez,* 174 DPR 716, 724-725 (2008).

La figura del contrato de opción a compra se incluyó en el Código Civil de 2020. El artículo 1029 define el contrato de opción a compra como el derecho del titular a decidir el perfeccionamiento de una compraventa previamente acordada, mediante la manifestación de su aceptación y en un plazo determinado, El cedente se mantiene comprometido a su cumplimiento durante el plazo prefijado. El título de constitución deberá contener, el domicilio las estipulaciones y demás pactos que el constituyente o constituyentes tenga por conveniente

contener. Además, deberá cumplir con los requisitos mínimos siguientes (1) el plazo de duración del derecho y si procede el plazo para su ejercicio, (2) la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real, (3) el precio o contraprestación para la adquisición del bien o los criterios para su fijación en el caso de las adquisiciones onerosas y (4) la prima pactada para su constitución, cuando el derecho se adquiere a título oneroso. 31 LPRA sec. 8822. Los contratos de opción a compra pueden inscribirse si cumplen estos requisitos y constan en escritura pública. El ejercicio del derecho a opción a compra y la adquisición onerosa requiere el pago previo o simultaneo del precio fijo establecido. 31 LPRA sec. 8824.

### Honorarios de abogado

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V faculta a los tribunales a imponer el pago de honorarios de abogado, a cualquier parte o su representación legal que haya sido temeraria. La temeridad pretende disuadir la litigación frívola, compensar los gastos incurridos por la parte que no ha sido temeraria y fomentar la transacción de los pleitos. La imposición de honorarios e intereses por temeridad es imperativa una vez se determina temeridad. Los honorarios por temeridad sancionan esa conducta en cualquier tipo de acción judicial. El concepto temeridad no está expresamente definido en las Reglas de Procedimiento Civil. El Tribunal Supremo de Puerto Rico ha expresado que el concepto temeridad es amplio y conlleva aquellas actuaciones de un litigante que (1) llevan a un pleito que pudo evitarse, (2) provocan la prolongación indebida del trámite judicial y (3) obligan a la otra parte a incurrir en gastos innecesarios para hacer valer su derecho. Un litigante perdidoso actúa con temeridad, cuando su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir

innecesariamente las molestias gastos e inconvenientes de un pleito. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 145, 147-149 (2022).

La facultad de imponer honorarios e intereses por temeridad es una de las mejores armas que tienen los tribunales para gestionar eficientemente los procedimientos judiciales el tiempo y la administración de la justicia y para proteger los litigantes de la dilación y los gastos innecesarios. La temeridad es contraria a los principios de eficiencia en la administración de la justicia y el buen funcionamiento de los tribunales. La sanción establecida en la Regla 44 supra, es un mecanismo poderoso para garantizar una solución, justa, rápida y económica de todo procedimiento. Sin embargo, no es temerario quien plantea asuntos complejos y novedosos, sobre los que no existen precedentes vinculantes o cuando existe alguna desavenencia honesta sobre el derecho aplicable. Por el contrario, es claramente temeraria, la parte que insiste contumazmente en alegar algo sin ninguna prueba fehaciente que lo apoye, que niega los hechos que le constan o son de fácil corroboración y que dilata los procedimientos judiciales para no responder por sus obligaciones. Una parte es temeraria cuando niega totalmente su responsabilidad, a pesar de que sabe o debió saber que su negligencia causó o contribuyó al daño, y que obliga a la demandante a una litigación extensa especialmente sobre la negligencia. La temeridad también la comete la parte que entiende que la cuantía reclamada es exagerada, pero no acepta con franqueza la responsabilidad por sus actos y se limita a litigar los daños reclamados y su valorización. De esa manera asume voluntariamente el riesgo y las consecuencias de litigar un caso en el que la negligencia surge prima facie. La imposición de honorarios de abogado a la parte temeraria descansa en la sana discreción judicial Los tribunales apelativos solo podrán variarla si existe un abuso de discreción. *SLG González-Figueroa v. SLG et al., supra,* págs. 149-150.

III

La apelante cuestiona en los tres primeros señalamientos de error la evaluación de la prueba del foro primario. Su representación legal sostiene que existe controversia de hechos esenciales que impiden dictar sentencia sumaria a favor del apelado. No obstante, alega que no existe controversia de hechos esenciales que imposibiliten dictar sentencia sumaria a favor de la apelante.

Nos corresponde determinar si el TPI erró al concluir sumariamente que la apelante incumplió sus obligaciones contractuales y no desestimar la demanda.

El TPI no cometió los tres primeros señalamientos de error. El apelado probó el incumplimiento contractual de la apelante. El 3 de octubre de 2023 ambas partes otorgaron un contrato de opción a compra.[10] La apelante concedió al apelado la opción a compra del inmueble en controversia, por el precio de $147,000.00. Las partes acordaron que el acuerdo tendría una vigencia de 90 días. Ambas partes expresaron su anuencia a que el comprador realizaría y asumiría el costo de las mejoras necesarias. La apelante reconoció la existencia de esa cláusula.[11] El apelado admitió que asumió el costo de las reparaciones requeridas y de cualquier daño que tuviera la propiedad.[12] Según el apelado, el contrato no contempló, si la vendedora tenía que consentir las reparaciones.[13]

Las partes enmendaron el contrato para corregir una dirección y extender su vigencia hasta el 15 de marzo de 2024.[14] La señora Carmen Colón Rodríguez, Mortgage Loan Supervision de FirstBank, explicó que el contrato se enmendó, porque el término de la opción estaba vencido y el

---

[10] SUMAC, Entrada número 1, anejo 1 ante el TPI.
[11] SUMAC, Entrada 81 pág. 28 línea 14 de la deposición de la apelante.
[12] Pág. 39, línea 5 de la deposición del apelado.
[13] Id, pág. 42.
[14] SUMAC, Entrada número 1, anejo 2 ante el TPI.

banco exigía que estuviera vigente.[15] La apelante admitió que firmó el documento libre y voluntariamente, pero alegó que fue un error. No obstante, admitió que no leyó el documento que le envió el banco, porque estaba ocupada y pensó que era solo un cambio de dirección.[16] Por último, reconoció que tenía la culpa de firmar la enmienda sin leer el contrato.[17]

La solicitud del préstamo se originó el 10 de octubre de 2023 bajo el programa CDBG del Departamento de Vivienda. El 27 de octubre de 2023 se recibió la tasación con las mejoras que necesitaba la propiedad. Las reparaciones se discutieron con el cliente. No obstante, el apelado fue advertido que no podía realizar las mejoras hasta que el comité verificara su crédito. El apelado declaró que el tasador estimó la totalidad de las mejoras en dos mil cien dólares ($2,100.00), quinientos dólares ($500) eran para la verja, mil quinientos ($1,500.00) para terminar las áreas y hacer las tareas de pintar el baño, empañetar y cien dólares ($100.00) para pintar el *storage*. No obstante, reconoció que se preocupó por el costo de las mejoras. El apelado declaró que se percató que las mejoras no valían la cantidad que estimó el tasador, cuando comenzó a hacerlas.[18] Fue enfático en que no podía realizar las mejoras cuando recibió la tasación, porque el banco le exigió esperar hasta la aprobación del préstamo.[19]

El 5 de febrero de 2024 el banco aprobó el préstamo y notificó al apelado de que podía realizar las mejoras. Al apelado se le informó que las mejoras eran necesarias, porque el Departamento de Vivienda requería que el tasador realizara una inspección final de la propiedad.[20] El banco envió un correo electrónico al apelado informándole que su

---

[15] Véase, contestación a primer interrogatorio de Carmen Colón Rodríguez, *Mortgage Loan Supervision* de FirstBank, SUMAC, Entrada número 81, anejo 4 del expediente ante el TPI.

[16] Véase, pág. 31, líneas 6 y 11 y pág. 37, líneas 4-8 de la deposición de la apelante.

[17] Pág. 80, líneas 15-17 de vla deposición de la apelante.

[18] Pág. 62, líneas 15-17, pág. 63, línea 13 y pág. 64, líneas 3-4 de la deposición del apelado.

[19] Pág. 69, líneas 10-12, pág. 70, líneas 2-4 de la deposición del apelado.

[20] Véase, contestación a primer interrogatorio de Carmen Colón.

solicitud de un préstamo por la cantidad de $105,000.00 había sido aprobada. La aprobación tendría una vigencia de 30 días a partir de su notificación.[21] El 21 de febrero de 2024, FirstBank envió una carta al apelado informándole la aprobación del préstamo. Además, fue advertido que el cierre se coordinaría tan pronto se completaran las reparaciones que requirió el tasador y que el Departamento de Vivienda expidiera la carta final.[22]

Según el apelado declaró, el 5 de febrero la apelante se negó a venderle la propiedad, con el argumento de que el contrato estaba vencido. No obstante, cuando la confrontó con el contrato, la apelante exigió que pagara la póliza del Fondo del Seguro del Estado.[23] La apelante admitió que (1) para el 5 y el 9 de febrero sabía las reparaciones que necesitaba la propiedad, porque el apelado se las dijo[24] (2) no le permitió al apelado hacer las mejoras hasta que no obtuviera la póliza de la CFSE,[25] (3) ella era la única persona que podía obtener la póliza y la consiguió el 9 de febrero,[26] (4) el 5 de febrero el apelado le informó la aprobación del préstamo,[27] (5) su autorización a las mejoras estaba sujeta a la aprobación del préstamo,[28] (6) autorizó al apelado a hacer las mejoras después que el banco aprobó el préstamo,[29] y (7) el contrato en el que se obligó a venderle la propiedad al apelado estaba vigente hasta el 15 de marzo.[30]

El apelado confirmó que el 5 de febrero le dijo a la apelante todas las reparaciones que tenía que hacer a la propiedad. Él dijo que le explicó que tenía que poner los bajos habitables, instalar las puertas y ventanas

---

[21] Notificación de Aprobación, Entrada núm. 81, anejo 8 ante el TPI.
[22] SUMAC, Entrada núm. 81, anejo 9 ante el TPI.
[23] Pág. 82, líneas 17-19, pág. 83 línea 3 de la deposición del apelado.
[24] Pág. 49, línea 10 de la deposición de la apelante.
[25] Pág. 42, líneas 1, 14, 19 de la deposición de la apelante.
[26] Pág. 42, línea 23 y pág. 43, línea 3 de la deposición de la apelante.
[27] Pág. 45, línea 13 de la deposición de la apelante.
[28] Pág. 45, línea 9 de la deposición de la apelante.
[29] Pág. 46, Líneas 13 de la deposición de la apelante.
[30] Pág. 99, línea 4 de la deposición de la apelante.

y empañetar el baño.[31] El apelado declaró que, ya para el mes de octubre había informado a la apelante la posibilidad de tener que arreglar los bajos y le mostró las fotos.[32] También dijo que siempre se mantuvo en comunicación con la apelante sobre el proceso que estaba realizando.[33]

La apelante reconoció que el apelado le dijo que el banco exigía que los bajos quedaran completamente habitables.[34] El apelado declaró que compró los materiales al día siguiente en que la apelante obtuvo la póliza del Fondo del Seguro del Estado. No obstante, surge de su testimonio que la apelante cambió de posición, porque el 16 de febrero fue a la residencia y le exigió que firmara un contrato privado.[35] El apelado no firmó el acuerdo propuesto por la apelante, porque ya tenían un contrato vigente.[36] Según el apelado, el 17 de febrero regresó a hacer los trabajos, pero la apelante lo sacó de la residencia.[37] La señora Carmen Colón Rodríguez, *Mortgage Loan Supervisor* del banco confirmó que la vendedora no le permitió la entrada al comprador para que pudiera realizar las mejoras y que el contrato venció sin un acuerdo. La representante del banco contestó que el apelado informó que la apelante no le permitía hacer las mejoras. Según la señora Colón, el apelado llamó posteriormente para informar que la apelante desistió de la compraventa.

Por su parte la apelante, reconoció que preparó un documento privado porque desconocía, si el apelado podía terminar las mejoras antes de que finalizara el contrato.[38] El documento incluía las cláusulas siguientes. El comprador pagaría y realizaría las mejoras. El vendedor no tenía que pagar las mejoras, si la compraventa no se materializaba por causa del comprador. No obstante, el vendedor tenía que pagar las mejoras, si la compraventa no se realizaba por su causa. La apelante

---

[31] Pág. 84, líneas 15 y 20, pág. 94, líneas 15 y 20 de la deposición del apelado.
[32] Pág. 85, líneas 7-8, 11-12 y 14 de la deposición del apelado.
[33] Pág. 74, línea 1 de la deposición del apelado.
[34] Pág. 97, líneas 5-7 de la deposición de la apelante.
[35] Pág. 122, líneas 13 y 15, pág. 123, líneas 10 y 13 de la deposición del apelado.
[36] Pág. 125, líneas 17-19 de la deposición del apelado.
[37] Pág. 127, líneas 4, 10-13 de la deposición del apelado.
[38] Pág. 48, líneas 1-3, 8 de la deposición de la apelante.

aceptó que prohibió al apelado entrar en la casa y continuar las reparaciones, porque se negó a firmar el contrato privado.[39] La señora Hernández Román explicó que no quería que las reparaciones se hicieran volando y dijo que desconocía si el apelado pudo haberlas terminado para el 15 de marzo.[40] No obstante, reconoció que el 9 de febrero, ya había autorizado al apelante a hacer las mejoras. Sin embargo, 11 días después le exigió que firmara un nuevo contrato.[41] Fue cuestionada, porque autorizó las mejoras si no tenía claro que el apelado podía realizarlas a tiempo. La apelante contestó que las autorizó para darle la oportunidad al apelado de comprar la propiedad.[42] Su explicación no nos convence porque admitió que para el 5 y el 9 de febrero el apelado ya le había dicho las reparaciones que necesitaba la propiedad.[43]

El testimonio de la apelante es contradictorio y confirma su incumplimiento contractual. La apelante declaró que en el mes de abril empañetó y selló las paredes y reparó la porquería hecha en los bajos. Sin embargo, admitió que no empañetó las paredes que ya habían sido empañetadas.[44] La apelante aceptó que fue el apelado quien empañetó los bajos.[45] Otros hechos relevantes admitidos por la apelante son los siguientes: (1) no quería vender la propiedad ahora, pero si en algunos cuatro o cinco años[46] (2) tenía la casa rentada por $850.00 y la anunció como recién remodelada[47] (3) le dijo al apelado antes del 15 de marzo que no podía seguir esperando.[48] A la pregunta de si no podía esperar hasta el 15 de marzo, contestó que estaba esperando desde el mes de octubre.

---

[39] Pág. 62, línea 19 de la deposición de la apelante.
[40] Pág. 65, líneas 20-21 y pág. 69, línea 18 de la deposición de la apelante.
[41] Pág. 59, línea 2 de la deposición de la apelante.
[42] Pág. 52, línea 16 de la deposición de la apelante.
[43] Pág. 49, línea 10 de la deposición de la apelante.
[44] Pág. 65, líneas 9-12, pág. 18, líneas 4-6 de la apelante.
[45] Pág. 72, líneas 13-14, pág. 73, línea 11 de la deposición de la apelante.
[46] Pág. 73, línea 19, pág. 75 líneas 21-23 de la deposición de la apelante.
[47] Pág. 72, líneas 3 y 7 de la deposición de la apelante.
[48] Pág. 78, línea 7 de la deposición de la apelante.

Aunque posteriormente dijo que podía esperar, admitió que estaba molesta porque no veía los resultados y que estaba cansada de esperar.[49]

No entendemos el interés de la apelante en que el apelado no hiciera porquerías y no trabajara a prisa, porque el banco ya había autorizado el préstamo y según lo pactado, la intención era consumar la compraventa. Una vez realizadas las mejoras y cumplidas las formalidades del cierre, el inmueble sería propiedad del apelado. No obstante, el apelado no pudo hacer las mejoras ni el cierre, porque la apelante le impidió el acceso a la propiedad, a pesar de que el contrato de opción a compra no había vencido. La apelante tampoco presentó ninguna evidencia que acreditara sus alegaciones de que el apelado realizó mejoras que no fueron incluidas en la tasación y que no eran necesarias para el financiamiento. Igualmente, no evidenció que era imposible que el apelado terminara las mejoras antes del vencimiento del contrato de opción a compra y de la autorización del préstamo. Su testimonio fue especulativo, porque no pudo precisar, si las mejoras podían estar listas antes del 15 de marzo. A eso se suma el hecho de que ni ella ni el apelado son peritos en construcción. El 9 de febrero la apelante autorizó las mejoras, a sabiendas de en qué consistían, porque el apelado se las informó.

Este tribunal realizó un juicio de *novo* de la totalidad de la prueba y concluyó que la apelante incumplió con el contrato de opción a compra que suscribió con el apelado. Nuestra decisión está basada en que no existe controversia sobre los hechos siguientes. Las partes suscribieron un contrato de opción a compra de una propiedad perteneciente a la apelante. Aunque el documento se titula compraventa, la apelante lo que concedió al apelado fue una opción de compraventa por el precio de $147,000.00. El apelado se comprometió a realizar las mejoras

---

[49] Pág. 68, líneas 11, 15, 21-23 de la deposición de la apelante.

necesarias para el financiamiento de la compraventa. Las partes suscribieron una enmienda al contrato en el que extendieron su vigencia hasta el 15 de marzo de 2024. El 5 de febrero de 2024 el apelado ejerció oportunamente su derecho a realizar mejoras necesarias, conforme a lo pactado en el contrato de opción a compra. Su diligencia es evidente, porque ese fue el mismo día en que el banco le informó la aprobación del préstamo y lo autorizó a hacer las mejoras necesarias para que el Departamento de Vivienda desembolsara los fondos y se hiciera el cierre hipotecario. El 5 de febrero el apelado le comunicó a la apelante que el préstamo fue aprobado y que iba a comenzar las mejoras. La apelante cuestionó la vigencia del contrato de opción a compra. El apelado la confrontó con la existencia de dicho contrato. La apelante entonces condicionó su autorización a que el apelado obtuviera la póliza de la Corporación del Fondo del Seguro del Estado. El apelado no pudo obtener la póliza, porque no era el dueño de la propiedad y tuvo que esperar que la apelante hiciera las gestiones para obtenerla. El 9 de febrero de 2024, la apelante obtuvo la póliza y autorizó a hacer las mejoras necesarias conforme al contrato de opción a compra. No obstante, posteriormente cambió de parecer, e impuso condiciones al apelado que no fueron parte del contrato suscrito entre ambas partes. La apelante impidió al apelado realizar las mejoras, hasta que no firmara una enmienda al contrato de opción para establecer que pasaría con las mejoras, si la compraventa no se materializaba. La propia apelante reconoció que esa condición no fue parte del contrato de opción a compra vigente. No existe evidencia que demuestre que los costos se elevaron, porque el apelado realizó mejoras que no estaban señaladas en la tasación. Tampoco existe evidencia de que el apelado realizó mejoras que no eran necesarias para el financiamiento.

La apelante no puede exigir al apelado el cumplimiento de obligaciones a las que no se comprometió contractualmente. La señora

Hernández Román no podía condicionar su autorización a las mejoras a la otorgación de un nuevo contrato, porque estaba atada la obligación que asumió en el contrato de opción a compra. A nuestro juicio, es un hecho que la apelante incumplió con su obligación de permitir al apelado entrar a la propiedad a realizar las mejoras necesarias para lograr el financiamiento. La apelante incumplió con las obligaciones que asumió un contrato legal, valido y sin vicio alguno. *Conklin v. Passalacqua,* supra. Por consiguiente, no procedía la moción de desestimación en la que solicitó la desestimación de la demanda.

No obstante, advertimos al TPI que no es correcto que el contrato de compraventa no es susceptible de cumplimiento. El vencimiento del préstamo otorgado por un tercero, no exime a la apelante del cumplimiento de las obligaciones que asumió en el contrato de opción a compra, y por consiguiente, con la venta de la propiedad. Sin embargo, para imponer responsabilidad a la apelante por el incumplimiento, el TPI primero debe evaluar si el apelado ejerció la opción de compraventa antes del vencimiento del contrato.

Por último, la apelante alega que el TPI erró al no imponerle a la señora Nélida Hernández Feliciano el pago de honorarios por temeridad. La apelante no tiene razón, porque no demostró que el foro apelado cometió un abuso de discreción. El TPI concluyó que la solicitud de temeridad era contraria a derecho, porque estaba fundamentada en el mero hecho de que la apelante prevaleció en la solicitud de desestimación. No obstante, quedó convencido de que la demandante pudo creer de buena fe que era parte del negocio jurídico en controversia.

IV

Por los fundamentos esbozados anteriormente, se confirma la Sentencia Parcial apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica su secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones